SMITH, *plaintiff in error, versus* THE STATE.

When death ensues by the act of one in the pursuit of an unlawful design,
without intent to kill, it is murder or manslaughter, as the intended offence
was felony or a misdemeanor.

Any crime, *liable* to be punished in the State prison, is a felony.

The using of any means, with intent to *destroy* the child of which a female is
pregnant, and the *destroying* of the child thereby before its birth, unless done
to preserve the life of the mother, constitute a *felony.*

If by the use of such means and with such intent, the death of the mother be
occasioned, it is *murder.*

The using of means, with intent to procure the *miscarriage* of a pregnant
female, and the procuring of the *miscarriage* thereby, unless done to pre-
serve the life of the mother, is a *misdemeanor.*

If, by the use of such means and with such intent, the death of the mother
be occasioned, it is *manslaughter.*

If, upon such a charge in an indictment, a verdict be rendered of murder, it
will be reversed for error.

To procure an abortion, as to a female, pregnant *but not quick* with child, was
not, at the common law, an offence, if done with her consent.

By our statute, the procuring of an abortion is an offence, whether the child
had quickened or not, and whether with or without the consent of the
mother.

WRIT OF ERROR.

On a former occasion, Smith, the plaintiff in error, was
tried upon an indictment for the murder of one Beringera D.
Caswell. The indictment contained four counts. Upon the
third court he was convicted of murder in the second degree,
and judgment was rendered that he suffer confinement at
hard labor for life. As to the three other counts, there was
no verdict. 32 Maine, 369.

To reverse that judgment, this writ of error is brought.
The alleged causes for the reversal were twenty-two in number.
Three of them only, viz: the 17th, 18th and 19th, need be
adverted to. They allege error in the third count of the

indictment. That count charged substantially, *that* Smith feloniously performed a described act upon said Beringera, she being pregnant, with a felonious intent to cause her to miscarry and to bring forth her child; *that*, by means of said act, she did bring forth said child dead; *that*, by the said act, said Beringera sickened and died; and *that*, in manner and form aforesaid, the said Smith, by his malice aforethought, murdered her.

The said 17th, 18th and 19th alleged causes for reversal were, in substance, that said count did not present a charge of murder, but a charge of manslaughter only, and that therefore the verdict and judgment thereon, were erroneous.

This became the only material question discussed in the opinion of the Court. The arguments were elaborate and able, extending to all the alleged grounds of reversal. But so much of them only, as bears upon the point, discussed in the opinion, can here be presented.

*Clifford*, for the plaintiff in error.

It is a rule of the common law, in force in this State, that when the death of a human being occurs by the act of one, who is in pursuit of an unlawful design, but without any intention to kill, this killing will be either murder or manslaughter, according as the *intended* offence is a felony, or only a misdemeanor. *State* v. *Smith*, 32 Maine, 369.

In this case, it is not alleged that there was any design to kill; the count is framed upon the basis that the intent of Smith was, not to kill, but to commit a subordinate offence, that of causing the deceased to miscarry.

When a statute describes a particular intent, as an element of a crime, the indictment must follow the exact language of the statute. *People* v. *Enoch*, 13 Wend. 173; *People* v. *Allen*, 5 Denio, 76; *Comm.* v. *Tuck*, 20 Pick. 362; 1 Stark. on Plead. 219, 222-3-4; *U. S.* v. *Gooding*, 12 Wheat. 476; Archb. on Plead. 20; 1 Chitty Co. Plead. 231, (margin 289;) 3 Chitty's Cr. L. 722; *People* v. *Lohman*, 2 Barb. S. C. R. 216; same case, 1 Comstock, 379; *Rex* v. *Neville*, 1 Mod.

Smith *v.* State.

295 ; *Rex* v. *Alsop*, Holt, 405 ; 3 Dyer, 363, Pl. 25 ; *Rex* v. *Tucker*, 1 L'd Raym. 442 ; *U. S.* v. *Mills*, 7 Pet. 142 ; 1 Chitty's Cr. L., 280, (4th ed. ;) *Brown* v. *Comm.* 8 Mass. 65 ; *Comm.* v. *Maxwell*, 2 Mass. 131 ; *Comm.* v. *Putnam*, 1 Pick. 139 ; *Comm.* v. *Balkam*, 3 Pick. 283 ; *Updegraff* v. *Comm.* 6 S. & R. 5.

The subordinate offence charged is but a misdemeanor, and therefore the principal offence cannot be murder. Davis' Prec. forms 2 & 3 ; 3 Chitty's Cr. L. 556, (Margin, 798 ;) *Comm.* v. *Parker*, 9 Metc. 263 ; *Comm.* v. *Banks*, 9 Mass. 387 ; *People* v. *Jackson*, 3 Hill, 92 ; 1 Black. Comm. 129 ; Foster's Cr. L. 268 ; 3 Chit. Cr. L. 729, (4th ed. ;) *People* v. *Enoch*, 13 Wend. 175 ; Wharton's Prec. of Indict. 109, n. 5, and forms 108 to 113 ; Dav. Prec. p. 34 ; 1 East's P. C. chap. 5, sect. 17—2 ; 1 Russ. on Cr. & M. 522, chap. 5 ; 3 Chitty's C. L. 798, forms of C. L. Court ; 1 Bouvier's Dic., Abortion.

Under the 17th, 18th and 19th causes assigned, we contend : —

1. The offence charged being manslaughter only, the verdict is illegal.

2. The judgment being for murder, though but in the 2d degree, cannot be sustained.

3. The sentence exceeds the *maximum* of the punishment of manslaughter, and therefore is erroneous.

*Tallman, Attorney General,* for the State.

The counsel has contended, that as the offence charged is a statute offence, it must be alleged in the exact words of the statute. Whatever may have been the reason for such a rule in England, it is not the law in this country. The only sensible doctrine is that, if the allegation bring the offence within the statute "substantially," it is sufficient. That is the doctrine held in this State. *State* v. *Temple*, 12 Maine, 214.

But homicide may be murder at the common law, independent of any statute. And the reason for using the very words of the statute therefore fails. If the allegation be sufficient in substance to bring the offence within the statute, nothing more can be necessary or useful. It is, however, said the pre-

cedents are otherwise. What then? Do precedents make the law, and who makes the precedents? Cannot the form of the precedents be changed, or new ones added? Or must they alone remain unalterable while all else is continually changing? And were they always so? Did they always make the law? If not, at what time did their authority commence?

It is true the precedents will show what forms have been sustained, but will not show that all others are necessarily improper and illegal.

The precedents, however, are not uniform.

The third count directly states that the miscarriage, caused by the prisoner, was the means of her death, and that in that manner the prisoner feloniously, wilfully and of his malice aforethought, did kill and murder the deceased.

Neither is the objection that the count does not follow the words of the statute in describing the subordinate offence, fatal to the indictment.

It charges the deceased was quick with child, and being so, a miscarriage was produced by the prisoner and the child brought forth dead; consequently he must have destroyed the child before its birth, and the intent so to do must be presumed and need not be averred, — 1 Chitty's Cr. Law, 233 ; Russ. and Ry. C. C. 445, — and therefore the offence is brought substantially within the statute, which is all that is now required.

The case of *People* v. *Lohman*, 2 Barb. S. C. 216, and 1 Comstock, 379, was an indictment for abortion, and does not apply where the subordinate offence is set out by way of inducement. There so much strictness is not required as in an indictment for the commission of the subordinate offence. Wharton's Precedents, 54.

This count, however, if not good under our statute, is sufficient at common law. It describes an illegal act, performed by the prisoner, which resulted in the death of the deceased — and an act of such character as renders the homicide murder.

It is not correct to say, that the act, resulting in death, must be a felony, in order to render the killing murder. Ros-

coe's Cr. Ev. (2d Ed.) 653. If an action, unlawful in itself, be done deliberately and with intention of mischief, and death ensue against or beside the original intention of the party, it will be murder. Foster, 261.

An act, the probable consequence of which may be and eventually is death, may be murder, though no killing may have been primarily intended. 1 Russell Cr. 482 ; 3 Chitty's Cr. L. 729.

More especially if it happen in the execution of an unlawful design, which, if not a felony, is of so desperate a character, that it must ordinarily be attended with great hazard to life. *United States* v. *Ross*, 1 Gall. 629.

Man commits murder, when he does an unlawful act, in a case so circumstanced, that he may expect death to ensue, and be the effect of it, and death does so ensue. 7 Dane, 126, ch. 212, art. 3, § 20.

It is not necessary therefore, that the unlawful act would have been a felony if perfected, in order to render the killing consequent on that act, murder. *People* v. *Rector*, 19 Wend. 560.

This disposes of so much of the argument of counsel, which endeavors to reduce this offence to manslaughter, because the original act was not a felony ; that is an immaterial point in this case.

Thus death caused by attempting abortion is murder. 1 Hale P. C. 429 ; 1 Russ. Cr. 454 ; 9 Mass. 387 ; 9 Metc. 101 ; *Comm.* v. *York*, ib. 265 ; *Comm.* v. *Parker*, 2 Ashmead, 227 ; *Comm.* v. *Keeper of the prison*, Foster, 261.

The subordinate offence, then, if sufficiently described, does warrant the verdict, that the prisoner was guilty of murder ; and that it is described with sufficient certainty, I have already shown.

The only remaining objection is, that this count describes murder in the second degree, and therefore in violation of the statute.

The degrees of murder are to be found by the jury, not from the allegations in the indictment, but from the facts prov-

Smith *v.* State.

ed at the trial. If there was evidence of express malice, then there would be murder in the first degree; the act would be described in the same manner, though the circumstances in the testimony would be different.

Is there then any thing in this count that would prevent showing at the trial any facts from which the jury might infer express malice in the prisoner? that an intention on his part existed to take the life of the deceased? Surely not; what but the facts on trial governed the jury in their verdict?

But if such a verdict could not be given on this count, is it necessarily illegal?

How can a count be drawn, where death occasioned by procuring abortion, when death was not originally intended? The facts must be set out, or those facts perhaps, would of themselves, show the offence to be murder of the second degree.

Is there therefore no punishment for such an act? Could such have been the intention of the legislature? Certainly not, but only that the jury should measure the degree of crime, and should certify by their verdict, what that degree was.

The crime of murder is one, but the punishment of its degrees, are graduated by its attending circumstances. Is the prisoner injured because the indictment is formed in the mildest degree? Is that any objection to the indictment?

It is common practice thus to draft indictments. If this count was then in the second degree, I apprehend that would not be an objection to it.

I have thus endeavored somewhat briefly to show, —

1st, That the verdict of the jury was correct.

2d, And that there is no error in the indictment.

3d, That the subordinate offence is sufficiently within the statute, but if not, —

4th, It is good at common law.

5th, That the third count is sufficient in form and substance.

TENNEY, J. — The record shows that the jury found a ver-

dict of guilty of murder in the second degree against the prisoner, upon the third count of the indictment. Thereupon judgment was rendered, and sentence, that he be punished by confinement to hard labor for the term of his natural life, in the state prison, was pronounced.

The seventeenth, eighteenth and nineteenth causes of error assigned are, that the charge in the third count of the indictment is manslaughter, and not murder in the second degree, and that the judgment and sentence thereupon are erroneous.

The third count in the indictment charges the prisoner with having feloniously, wilfully, knowingly, maliciously and inhumanly forced and thrust a wire up into the womb and body of one Beringera D. Caswell, she being then pregnant and quick with child, with a wicked and malicious and felonious intent to cause and procure her to miscarry and bring forth the child, of which she was then pregnant and quick. And it is charged that by the means of forcing and thrusting the said wire, into her womb and body, she did bring forth the said child of which she was pregnant and quick, dead. And it is further charged that by the forcing and thrusting of the said wire by the defendant into her womb and body, she afterwards became sickened and distempered in her body, and by the same means so used, she suffered and languished, and afterwards by reason thereof, she died. And it is averred, in the same count of the indictment, that the defendant in manner and form as aforesaid, feloniously, wickedly and of his malice aforethought, did kill and murder, contrary to the form of the statute, &c.

It is important to decide, whether in this count, the prisoner is directly accused of having inflicted violence upon the mother, and thereby caused her death, or whether in putting into execution an unlawful design, death took place collaterally, or beside the principal intention.

If medicine is given to a female to procure an abortion, which kills her, the party administering it, will be guilty of her murder. 2 Chitty's Cr. Law, 729 ; 1 Hale's P. C. 429.

This is upon the ground, that the party making such an attempt with or without the consent of the female, is guilty of murder, the act being done without lawful purpose and dangerous to life, and malice will be imputed. *Commonwealth* v. *Parker*, 9 Metc. 263 ; 1 Russell on Cr. 454.

When death ensues in the pursuit of an unlawful design, without any intention to kill, it will be either murder or manslaughter, as the intended offence is felony or only a misdemeanor. Foster, 268. Thus if a man shoot at poultry of another, with intent merely to kill them, which is only a trespass, and slay a man by accident, it will be manslaughter ; but if he intended to steal them, when dead, which is felony, he will be guilty of murder. Kel. 117 ; 2 Chitty's Cr. Law, 729.

At common law, it was no offence to perform an operation upon a pregnant woman by her consent, for the purpose of procuring an abortion, and thereby succeed in the intention, unless the woman was "quick with child." *Commonwealth* v. *Bangs*, 9 Mass. 387; *Commonwealth* v. *Parker*, before cited. And under the ancient common law, if a woman be "quick with child" and by a potion or otherwise, killeth it in her womb ; or if a man beat her, whereby the child dieth in her body, and she be delivered of a dead child, this is a great misprision but no murder." 3 Inst. 50. In both these instances the acts may be those of the mother herself and they are criminal only as they are intended to affect injuriously, and do so affect the unborn child. If, before the mother had become sensible of its motion in the womb, it was not a crime ; if afterwards, when it was considered by the common law, that the child had a separate and independent existence, it was held highly criminal.

Similar acts with similar intentions by another than the mother, were precisely alike, criminal or otherwise, according as they were done before or after quickening, there being in neither, the least intention of taking the life of the mother. If in the performance of these operations and with these designs, an abortion took place, and in consequence of the abor-

tion, the mother became sick, and death thereupon followed, it was not murder, because the death was collateral, and aside of the principal design, and success in the principal design did not constitute a felony. This distinction is very clearly expressed, in the case of the *United States* v. *Ross*, 1 Gal. 624.

" If a number of persons conspire together, to do any unlawful act, and death happen from any thing done, in the prosecution of the design, it is murder in all, who take part, in the same transaction. . If the design be to commit a *trespass*, the death must ensue *in prosecution*, of the original design, to make it murder in all. If to commit a *felony*, it is murder in all, although the death take place *collaterally* or beside the principal design. More especially will the death be murder, if it happen in the *execution of an unlawful design*, which if not felony is of so desperate a character, that it must ordinarily be attended with great hazard to life ; and a *fortiori*, if death be one of the events, within the obvious expectation of the conspirators."

In the third count of the indictment, the prisoner is charged with no assault upon the mother of the child. There is therein no allegation that any wound of any description had been inflicted upon her, or any injury done, suited of itself to cause death. It is manifest, that of whatever he is accused in reference to the intention of causing miscarriage, and the measures employed to carry out that intention, and the success attending it, it was by the consent of the mother, if not by her procurement.

This count alleges the design to cause the miscarriage, by means of the forcing and thrusting up into the womb, of the wire, and the subsequent miscarriage ; also the sickness and distemper ensuing immediately afterwards, followed by the death of the mother. It is alleged that the means used to procure the miscarriage were the cause of death ; but it was evidently intended to be charged as the remote cause. The charge substantially is, that the miscarriage was the proximate cause of the death.

In the case of *Commonwealth* v. *Parker*, the indictment is

in very nearly the same language as that employed in the count we are now considering, as touching the charge of the subordinate offence, excepting in that, there was no allegation, that the mother was "quick with child," whereas in this, it is so alleged. By reason of that omission, it was held, and we think properly, that no offence at common law was charged. Consequently in this, so far as it regards the subordinate offence, the defendant is charged with what at common law was an offence, by causing the abortion of a child, so far advanced in its uterine life, that it was supposed capable of an existence separate from the mother; and not with any crime arising from an injury to the mother herself.

The conclusion is, therefore, that in this count the defendant is accused of causing death in the pursuit of an unlawful design, without intending to kill; and that the death was not in the *execution of that unlawful design*, but was collateral or beside the same.

That part of the indictment upon which the judgment and sentence against the prisoner is based, is for a violation of the statute, which has in this respect, essentially changed the common law. There is a removal of the unsubstantial distinction, that it is no offence to procure an abortion, before the mother becomes sensible of the motion of the child, notwithstanding it is then capable of inheriting an estate; and immediately afterwards is a great misdemeanor. It is now equally criminal to produce abortion before and after quickening. And the unsuccessful attempt to cause the destruction of an unborn child is a crime, whether the child be quick or not. R. S. ch. 160, sec. 13 and 14.

We now come to the consideration of the question, whether the subordinate offence, as charged in the third count in the indictment is a felony or otherwise, under the statute.

By the Revised Statutes, ch. 167, sec. 2, the term felony, when used in any chapter, in the title of "crimes and offences," &c. shall be construed to include murder, rape, arson, robbery, burglary, maims, larceny, and every offence punishable with death, or by imprisonment in the state prison.

Every person, who shall use and employ any instrument with intent to destroy the child of which a woman may be pregnant, whether such child be quick or not, and shall thereby destroy such child before its birth, shall be punished by imprisonment in the state prison, not more than five years, or by fine, &c.    R. S. ch. 160, sec. 13.

It is obvious, if the prisoner be charged with the murder of the mother in proper form, in the commission of the subordinate crime, and the subordinate crime is such as is described in the statute referred to, and that is properly charged, the judgment and sentence upon this count is authorized, and there is no error therein.    But if the subordinate offence as charged, does not constitute a felony under the statute, the judgment and sentence are erroneous.

The offence described in the statute, chap. 160, sect. 13, is not committed unless the act be done with an "intent to destroy such child" as is there referred to, and it be destroyed by the means used for that purpose.    It is required by established rules of criminal pleading, that the intention, which prompted the act, that caused the destruction of the child, as well as the act itself and the death of the child thereby produced, should be fully set out in the indictment, in order to constitute a crime punishable by imprisonment in the state prison, under the statute.    The allegation, that a *certain* instrument was used upon a woman pregnant, and that the use of that instrument caused her to bring forth the child, dead, is not a charge, that the one using the instrument intended to destroy the child.    The inference of such design, from the use of the instrument, and its effect, is by no means necessary.

The third count in the indictment alleges the act to have been done with the intent to cause and procure the deceased to *miscarry* and *bring forth the child* of which she was then pregnant and quick ; and that by means of that act, she brought forth the child, dead.    But there is no allegation, that the act was done, with the *intention* that she should bring forth her child, dead, or with an intent to destroy it, unless

the words *miscarry*, and *bring forth the child*, necessarily include its destruction.

The expulsion of the *ovum* or *embryo*, within the first six weeks after conception, is technically *miscarriage;* between that time and the expiration of the sixth month, when the child may by possibility live, it is termed abortion; if the delivery be soon after the sixth month, it is termed premature labor. But the criminal attempt to destroy the *fœtus*, at any time before birth, is termed in law a *miscarriage*, varying as we have seen in degree of offence and punishment, whether the attempt were before or after the child had quickened." Chitty's Med. Jur. 410. Other writers on the subject give a similar definition of the term "miscarriage." Hoblyn's Dictionary of terms used in medicine and other collateral sciences. The converse of this last proposition cannot be true, as there are undoubtedly many miscarriages, involving no moral wrong.

If the term *miscarriage* were to be understood in the indictment, in its most limited sense, it cannot be denied, that in effect, it must be identical with the destruction of the *fœtus*. But this indictment itself has given to the word "miscarriage" the more general signification. It charges, that *the miscarriage*, was of the woman who was pregnant, and "quick with child." The term "quick with child" is a term known to the law, and courts are presumed to understand its meaning. A woman cannot be "quick with child" until a period much later than six weeks from the commencement of the term of gestation. The more general meaning of the word miscarriage must therefore be applied. The indictment charges no time, after the quickening, when the miscarriage took place. It may have been at any period, when the birth would have been premature. The language of the indictment, when taken together, construed in its ordinary, or in its technical and legal signification does not forbid this. And labor is premature, if it take place at any period before the completion of the natural time.

It is admitted by Doct. Paris, a writer of high repute on

medical jurisprudence, from the number of established cases, it is possible, that the *fœtus* may survive and be reared to maturity, though born at very early periods. Many ancient instances are stated of births even at four months and a half with continued life even till the age of twenty-four years. And the parliament of Paris decreed, that an infant at five months possessed the capability of living to the ordinary period of human existence ; and it has been asserted, that a child delivered at the age only of five months and eight days may live ; or according to Beck and others, if born at six months after conception. Chitty's Med. Jur. 410 and 411. Many of the facts, upon which the opinions of writers upon medical jurisprudence are founded, may be erroneous, and the opinions incorrect. We cannot take judicial notice of either. But it is not too much to say, that a child may be born living, when its birth may be so soon after conception, that it is premature. The *fœtus* may be expelled by unlawful means, so soon after conception, that extra uterine life cannot continue for any considerable length of time, and yet after birth it may once exercise all the functions of a living child. We have found no authority, that this may not be termed a miscarriage, if the word is not confined to its most limited meaning. And if it be so, it is not perceived, that it ceases to be correct, if the life of the child prematurely born is further prolonged. It is quite clear therefore, that the word *miscarriage* in its legal acceptation, and as used in this indictment, does not necessarily include the destruction of the child before its birth ; and a design to cause its *miscarriage* is not the same thing as a design to *destroy* the child.

The other term used in the indictment, " to bring forth the said child," does not imply even a premature birth. Consequently it gives no additional strength to the charge.

It follows, that the indictment, not containing an allegation of a design, which is an essential ingredient in the offence first charged, in the third count, to make it a felony, the subsequent and principal accusation is that of manslaughter only ;

and the seventeenth, eighteenth and nineteenth errors are well assigned.

Many other errors are assigned and relied upon. In the discussion of the principles involved in the questions raised, the counsel for the plaintiff in error and the attorney general have exhibited great research, learning and ability. It might be desirable to the profession, and particularly to those interested in criminal pleading, that there should be an opinion upon each of the errors assigned; but it is unnecessary for a disposition of the case.

Judgment reversed, and the Court order that the prisoner be discharged from his imprisonment and go thereof without day.