# Bissinger v. Prince & Blackman.

*Action to recover Damages for the Breach of a Contract.*

1. *What constitutes a contract.*—When a contract is not, by law, required to be in writing, parties may verbally agree on all of the terms, and their mutual assent thereto makes a complete contract; but, if it is stipulated, or if during the negotiations it is shown that the parties intended that the oral agreement should be reduced to

[Bissinger v. Prince & Blackman.]

writing, as the evidence of the finality and results of their negotiations and discussions, there is no completed contract until the writing is executed.

2. *Same; case at bar.*—Where with the intention of entering into a contract for the erection of buildings upon unimproved lots, contractors and the owner of the lots carry on a correspondence in which they discuss the terms of the contract, the location of the buildings and other matters pertaining to their construction, but it was not deducible from such correspondence what was to be the character of the buildings, what were their dimensions, and what sums were to be paid for their erection, and it was shown that it was the intention of both of the parties to the negotiation that the contract should be reduced to writing at some time in the future when they should meet and finally determine and mutually agree upon all of the terms of the contract, and in this condition the correspondence terminated, there was not completed a contract between the parties for the erection of the buildings, and the contractors can not maintain an action against the owner to recover damages for the alleged breach of the contract.

APPEAL from the Circuit Court of Dale.

Tried before the Hon. J. M. CARMICHAEL.

The facts of this case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the general affirmative charge in his behalf. The court refused to give this charge, and the defendant duly excepted.

There were verdict and judgment for the plaintiffs, and the defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

BORDERS & CARMICHAEL, for appellants.—There was no completed contract between the parties, such as would authorize a recovery for probable profits.—*Hodges v. Sublett,* 91 Ala. 588; Bishop on Contracts, 321, 329, 330, 333 ; 1 Parson on Contract, 491 and note.

MARTIN & BLACKMAN, *contra.*

BRICKELL, C. J.—The action, in which the appellees were plaintiffs and the appellant was defendant, is brought to recover damages for an alleged breach of a contract by which the defendant employed the plaintiffs to erect for him two brick houses in the town of

31

Ozark. The primary and more important question of the case is, whether there was a completed contract between the parties, or mere discussion and negotiation looking to the making of a contract at some time in the future.

The fact is conceded, and if it be not is manifest, that prior to the correspondence in writing passing between the parties, the verbal discussions and negotiations had not resulted in the making of a contract. The question hinges on whether a contract may be deduced from the writings when read in the light of the attendant circumstances.

The defendant was a resident of Chattanooga in Tennessee, owning unimproved lots in the town of Ozark, upon which he contemplated the erection of brick storehouses. The plaintiffs were contractors residing in Ozark, and while on a visit to Ozark in December, 1890, on inquiry, the plaintiffs furnished him with plans and specifications, and estimates of the costs of the building of the houses, with which he expressed satisfaction, and requested the plaintiffs to correspond with him. On the 18th February, 1891, the plaintiffs opened the correspondence by two letters of that date addressed to the defendant. The first of these letters announce that the plaintiffs had decided that forty-five hundred dollars was as low as they could build the house and do an honest job, and expressed the wish to hear soon from the defendant. The writer adds a postcript stating that on the day before they had commenced making brick, and in praise of the quality of the brick. The second letter contained a drawing of the front of the building, and is descriptive of the house proposed to be built and of the work to be done by the plaintiffs. The defendant replied on the 21st February, acknowledging the receipt of the letters, pointing out various omissions in the work to be done, in the specifications of the plaintiffs, concluding by saying that he would go to Louisville soon and when he made necessary arrangements the plaintiffs would hear from him. On the 25th February, the defendant wrote, saying he had made the necessary arrangements to build, "and shall accept your bid and give you the contract, provided you agree to make those various alterations and additions mentioned in my last letter." As it will take about a month before I can come

to Ozark, I thought it best to notify you, so that you can make the necessary arrangements in regard to brick and lumber. If you should commence to dig the foundation, be particular to get the proper measurement of my ground, and start to measure from Mr. Dewling's corner. Each lot must measure 49½ feet. I have made arrangements with Mr. Dewling to build my wall six inches on his ground, which will give me fifty feet to build on. At any rate before you commence digging, you had better see Mr. Dewling about the matter, and if he should not agree to it, let me know it. Address your letter to S. Rissinger, Rhea Springs. P. S.—I enclose a little sketch of the plan. I omitted to mention that we shall, when I come down, make a written contract." The plaintiffs replied on the 3d March, as follows: "Your letter of the 25th to hand and noted. In reply will say that the painting will be extra, as we are not posted in that line. So far as the alterations were concerned, we will make them to suit you, when you come down. We have over 100,000 brick made now, and will burn next week. Will be ready to lay the brick inside of three weeks. We saw Mr. J. W. Dewling and he agreed to let you put ½ the wall on his land, but suggests that you leave 12 feet alley at the rear end of the building. If so let us know at once." On March 10th, plaintiffs sent defendant the following telegram, addressed to Rhea Springs: "Must we proceed, painting included," to which the defendant replied by letter of that date, as follows: "Your dispatch just received, and in answer would say, you may consider that you have the contract, but would not advise you to commence work until I come, as I expect to change the plans of the building, and want you to let me know how much it will cost to build both stores one story high. I intend to build another behind my lot, 20 feet front, 70 feet deep, 13 feet high ceiling, one story, let me know for how much you can put up a house of this kind, with same front as before. Answer by return mail." The plaintiffs replied on 15th March as follows: "Your letter just received and noted. Will say Moseley & Faust want you to come down as soon as possible and all contract together, as it will be cheaper for you all. Come as soon as you can. We are burning brick now. Can sell them at once, but will hold them for your building.

We have bought two car loads of lumber for your building, but it is flooring and so we can make any change you desire.'' This terminated the correspondence.

It is an elementary principle, that there can be no valid contract without the mutual assent of the parties—their minds must meet and concur as to all the essential elements the contract involves ; as to the subject matter, and as to their respective rights and duties.—*Hodges v. Sublett*, 91 Ala. 588. Subjecting this correspondence to this test, it is impossible to deduce a contract, an agreement by the parties as to its essential elements. Can it be said, the defendant had determined upon the precise character of the houses he would construct? If so, what were the dimensions? Were they to be in accordance with the plans the plaintiffs had submitted, incorporating the alterations and additions the defendant suggested in his letter of February 25th? Or were they to be constructed one story high, as he suggested in the letter of March 10th? What sum was the defendant to pay, and when was it payable? These are all inquiries upon which there must be an explicit answer deduced from the correspondence, or from it there can not be deduced a contract. The fact is, as is apparent from the correspondence, that while the defendant, having made his monetary arrangements, had determined to build on the lots, he had not determined the character of the buildings, and hence, he informed the plaintiffs in the letter of February 25th, which bears more resemblance than any other, to an acceptance of their proposals, that when he came to Ozark, they must make a written contract. The principle is well settled, that when parties intend that an oral agreement shall be reduced to writing, as the evidence of the finality and results of their negotiations and discussions, until the writing is executed, the transaction remains incomplete—there is nothing binding on either party, and either may abandon all further negotiation or discussion.—*Hodges v. Sublett*, 91 Ala. 588, *supra*; 3 Am. & Eng. Encyc. Law, 854-55 ; *Sibley v. Felton*, 156 Mass. 273 ; *Winn v. Bull*, 7 L. R. Ch. Div. 29. Without indulging in any extended analysis of the correspondence, the plaintiffs by the letter terminating it, seem to recognize the real relations existing between them and the defendant, when they request him, at the instance of Mosely & Faust, to

come as soon as possible, that all may contract together, as it would be cheaper for all; language not reconcilable with the existence of a completed contract.

The result is, the court below erred in the refusal of the general affirmative instruction to find for the defendant, and this conclusion renders unnecessary a consideration of other questions presented by the assignment of errors.

Reversed and remanded.