STATE of Minnesota, Appellant,

v.

John (NMN) SOTO, Respondent.

No. C1-85-1161.

Supreme Court of Minnesota.

Dec. 6, 1985.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

Stephen W. Cooper, Salvador M. Rosas, Neighborhood Justice Center, St. Paul, for respondent.

Douglas Peine, Janlori Goldman, Legal Counsel, Minneapolis, Nan D. Hunter, Janet Benshoof, Suzanne M. Lynn, New York City, for amicus curiae Minn. Civil Liberties Union.

KELLEY, Justice.

The Ramsey County Grand Jury indicted the respondent John Soto for the death of an 8½ month old fetus. Counts III and IV of the indictment charged him with causing the death by negligent operation of a motor vehicle while under the influence of alcohol and while having a blood alcohol concentration of 0.10 or more in violation of Minn. Stat. § 609.21 (Minn.1984). Holding that an 8½ month old viable fetus capable of sustained life outside the womb of the mother was not a "human being" within the meaning of the statute, the Ramsey County District Court dismissed the two counts. We affirm.[1]

On November 8, 1984, while operating a motor vehicle in the city of St. Paul, the respondent John Soto, when allegedly under the influence of intoxicating liquor and at a time he had a blood alcohol concentration of more than 0.10, negligently drove into an intersection, violently striking a vehicle operated by Mrs. Jannet Anne Johnson who was at the time 8½ months pregnant.[2]

Mrs. Johnson sustained a fractured pelvis and a fracture of the left femur, among other injuries. On arrival at the hospital following the accident, a physician, using ultra sound procedures, determined that the heartbeat of the fetus and its position

1. Following the state's filing of a timely appeal, this court granted the petition for accelerated review, bypassing the court of appeals pursuant to Rule 118, Minn.R.Civ.App.P.

2. To resolve the issue on this appeal, we must accept the version of the facts most favorable to the prosecution, and, in stating the facts in this opinion, we have done so. However, we do note there may be factual disputes about the accident occurrence events, the fact of intoxication and the cause of fetal death.

in the uterus were not abnormal. Several hours later, however, the fetal heartbeat was not detectable indicating the child had died *in utero*. A subsequent Caesarean section resulted in a stillbirth. The fetus, a male, was normally developed and from 36 to 38 weeks in estimated age. The normal delivery time for a human fetus is 40 gestational weeks. An autopsy performed by the Ramsey County Medical Examiner resulted in a final diagnosis of "intercranial hemorrhage associated with closed head trauma." The medical examiner determined the stillbirth was only attributable to the head injuries the fetus had sustained in the collision.

The Ramsey County Grand Jury returned a four count indictment charging violation of Minn.Stat. § 609.21 (1984). Counts I and II charged criminal vehicular operation resulting in injury to Mrs. Johnson. Counts III and IV charged criminal vehicular operation resulting in death of the unborn child. In moving to dismiss Counts III and IV of the indictment, the defendant claimed that a motorist could not be convicted of criminal vehicular operation resulting in death unless the death was that of a "human being" and that the "human being" requirement could only be satisfied by proof the victim was "born alive and had an independent and separate existence from his mother."[3] As indicated, the trial judge agreed with this contention,[4] and thus the sole issue on appeal is whether a viable fetus capable of sustained life outside the womb is a "human being" within the meaning of Minn.Stat. § 609.21, subd. 1 (1984).

3. The relevant section of the vehicular homicide statute (Minn.Stat. § 609.21, subd. 1) reads:
   Whoever causes the death of a *human being* not constituting murder or manslaughter as a result of operating a vehicle * * * is guilty of criminal vehicular operation resulting in death. (emphasis supplied)

4. The trial judge attached to the dismissal order a well researched and carefully written memorandum. Though we essentially concur with his well considered legal conclusions, we note that we are not bound by them, and therefore we will independently examine and interpret the

■ In the United States some jurisdictions recognize common law crimes as well as those crimes defined and proscribed by legislative enactment. Such states are known as "common law" states. Other states of the union have abolished common law crimes either by statute or constitution, and have provided that no act or omission constitutes a crime unless defined by statute. Such jurisdictions are known as "code states." Minnesota is a "code state." Minn.Stat. § 609.015 (1985).[5] Thus, in Minnesota, the legislature has exclusive province to define by statute what acts shall constitute a crime and to establish sanctions for their commission. *State v. Olson*, 325 N.W.2d 13, 17–18 (Minn. 1982); *State v. Forsman*, 260 N.W.2d 160, 164 (Minn.1977). Notwithstanding abolishment of common law crimes, Minn.Stat. § 609.015, subd. 1 (1984) suggests that it is not impermissible to use common law rules of construction in the interpretation of penal statutes, but only in aid of statutory construction. *Forsman*, 260 N.W.2d at 164; *State v. Hayes*, 244 Minn. 296, 70 N.W.2d 110, 112–113 (1955). Moreover, Minn.Stat. § 645.08(1)(1984) directs that words and phrases as used in statutes are to be construed according to their common and approved usage. *See McClish v. Pan-O-Gold Baking Co.*, 336 N.W.2d 538, 543 (Minn.1983).

■ From the earliest days of statehood this court has followed a long tradition of strictly construing penal statutes. A criminal offense should not be created by an uncertain and doubtful statutory construction. In the presence of any doubt, penal statutes are to be construed so as not to

statute. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579 (Minn.1977).

5. Minn.Stat. § 609.015 (1984) insofar as applicable reads as follows:
   Subdivision 1. Common law crimes are abolished and no act or omission is a crime unless made so by this chapter or by other applicable statute, but this does not prevent the use of common law rules in the construction or interpretation of the provisions of this chapter or other statute. * * *.

multiply felonies. *See United States v. Gideon,* 1 Minn. 292, 296 (Gil.226) (1856). The rule of strict construction of criminal statutes is essential to guard against the creation of criminal offenses outside the contemplation of the legislature, under the guise of "judicial construction." *State v. Mims,* 26 Minn. 191, 2 N.W. 492 (1879). *See also State v. Haas,* 280 Minn. 197, 159 N.W.2d 118, 121 (1968); *State v. End,* 232 Minn. 266, 45 N.W.2d 378, 382 (1950).

With those general principles in mind, we turn, then, to an examination of our vehicular homicide statute (Minn.Stat. § 609.21, subd. 1 (1984)). That statute uses the phrase "causes the death of a human being." Although it has never precisely been defined by statute, the term "human being" has been used in Minnesota homicide statutes since territorial days. *See, e.g.,* Public Statutes, ch 89, § 1 (1849).[6] The term "human being" was used in the state's first vehicular homicide statute, 1937 Minn.Laws, ch. 464, § 25, first codified in the highway code at Minn.Stat. § 169.11 (1941). The term "human being" has been used repeatedly in subsequent modifications of that statute. *See* Minn. Stat. § 609.21 (1965), the "criminal negligence resulting in death" statute. Finally, the legislature amended the vehicular homicide provisions in 1983 and 1984 to make them read as they now exist.

■ Because none of the homicide statutes provide a statutory definition of the term "human being," under Minn.Stat. § 609.015 (1984) this court may refer to common law rules as an aid to construction or interpretation of the phrase as it is used in the vehicular homicide statute.

At common law it is clear that only a living human being could be the victim of a homicide. To become a human being within the meaning of homicide statutes at common law, a child had to be born alive and have an existence independent of and separate from its mother. *See W. LaFave and A. Scott,* Criminal Law 530–32 (1972); 40 C.J.S. *Homicide* § 2b (1944); 2 *C. Torcia,* Wharton's Criminal Law 95–96 (1979). The "born alive" rule dates back to at least the 17th century when the great common lawyer, Sir Edward Coke, wrote that the killing of an unborn quickened child "is a great misprision and no murder." 3 Coke Institutes 58 (1648). The courts and commentators accepted Coke's views as authoritative on the common law. The "born alive" requirement was reiterated by Blackstone in 1 Blackstone Commentaries 129–130 (1765). As has been elsewhere thoroughly documented, Blackstone had tremendous impact on the development of the common law in the original American colonies and in the early states of this new country. By 1850, the "born alive" rule had widespread general acceptance by all jurisdictions in the United States which had considered the issue.

We have been informed by brief and in oral argument, that of 25 jurisdictions in the United States which have considered the issue, both in so-called "common law" and in so-called "code" states, 23 have adopted the "born alive" rule.[7] From the

---

6. We note that until 1963 the penal code of the state included a feticide provision which declared the willful killing of an *unborn child* by injury to the mother as manslaughter. Minn. Stat. § 619.16 (1961). In 1963 the feticide provision of the homicide laws was repealed. 1963 Minn.Laws, ch. 753, art. 2, § 17. Replacing the statute was an enactment relating to abortion under the title "Offenses Relating to Morality". Minn.Stat. § 617.18 (1965). That statute, in turn, was repealed in 1974 after the Supreme Court of the United States rendered its decision in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), 1974 Minn.Laws, ch 177, § 7.

7. *See, e.g.: Clarke v. State,* 117 Ala. 480, 23 So. 67 (1898); *Keeler v. Superior Court,* 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970); *State v. McCall,* 458 So.2d 875 (Fla.Dist.Ct.App.1984); *White v. State,* 238 Ga. 224, 232 S.E.2d 57 (1977); *People v. Greer,* 79 Ill.2d 103, 37 Ill.Dec. 313, 402 N.E.2d 203 (1980); *Hollis v. Commonwealth,* 652 S.W.2d 61 (Ky.1983); *State v. Gyles,* 313 So.2d 799 (La.1975); *Smith v. State,* 33 Me. 48 (1851); *People v. Guthrie,* 97 Mich.App. 226, 293 N.W.2d 775 (1980); *State v. Doyle,* 205 Neb. 234, 287 N.W.2d 59 (1980); *State in the Interest of A.W.S.,* 182 N.J.Super. 278, 440 A.2d 1144 (N.J. Super.Ct.App.Div.1981); *State v. Willis,* 98 N.M. 771, 652 P.2d 1222 (N.M.Ct.App.1982); *People v. Hayner,* 300 N.Y. 171, 90 N.E.2d 23 (1949); *State v. Sogge,* 36 N.D. 262, 161 N.W. 1022 (1917);

foregoing it is clear that the common law "born alive" rule is now well-established in the great majority of jurisdictions. In many jurisdictions the rule existed long before enactment of the vehicular homicide statutes by our own legislature.

While neither commentaries by renowned common law authorities nor precedents from foreign jurisdictions with respect to the interpretation of the words, "human being" are binding on us by principles of stare decisis, they are of considerable persuasion, particularly in view of their near unanimity. This court has never specifically addressed the issue. However, in connection with a different homicide statute (Minn.Stat. § 609.19(1) (1984)) in which the victim definitional phrase "human being" is used, we did indirectly acknowledge the "born alive" rule. *See State v. Kinsky*, 348 N.W.2d 319 (Minn.1984). In affirming a conviction of a mother for an infant homicide, we noted:

> [T]here exists authority that the state must prove that the infant was 'born alive and had an independent and separate existence from its mother' * * *.

*Id.* at 324–25. Indeed, the state acknowledges that absent other considerations, the application of the common law would mandate the "born alive" rule of interpretation.

The state, however, contends that instead of reliance on the common law of other jurisdictions, this court should confine itself to what the state considers to be the common law of Minnesota. The state argues that this court in *Verkennes v. Corniea*, 229 Minn. 365, 38 N.W.2d 838 (1949) recognized that an unborn fetus could be a human being. The state then claims that *Verkennes* should provide the controlling authority for common law interpretation of

"human being" in this case. In *Verkennes* we held the personal representative of an unborn but viable fetus, capable of a separate and independent existence, could maintain a civil action under the Minnesota Death by Wrongful Act Statute.[8] The state, relying heavily on *Commonwealth v. Cass*, 392 Mass. 799, 467 N.E.2d 1324 (1984), asserts that by so ruling we implicitly rejected the "born alive" common law rule. Massachusetts is a "common law" jurisdiction and one of the two "common law" jurisdictions which have rejected the "born alive" test. In *Cass* the Massachusetts court, in ruling that a viable fetus was a "person" for the purposes of that state's vehicular homicide statute, relied on and extended an earlier holding in the civil case of *Mone v. Greyhound Lines, Inc.*, 368 Mass. 354, 331 N.E.2d 916 (1975) which had ruled that a viable fetus was a "person" within that state's wrongful death statute. In doing so, the Massachusetts court stressed that its vehicular homicide statute was enacted shortly after the *Mone* decision, and therefore the court reasoned, "Despite the fact that *Mone* was a civil case, we can reasonably infer that, in enacting (the vehicular homicide statute), the Legislature contemplated that the term 'person' would be construed to include viable fetuses." *Id.*, 467 N.E.2d at 1326. In urging us to follow *Cass*, the state asks us to infer that the Minnesota legislature, in enacting Minn.Stat. § 609.21 in 1963, intended "human being" to include a viable fetus in accordance with our 1949 *Verkennes* decision. As support, the state cites Minn.Stat. § 645.17(4) which reads, "When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter

---

*State v. Dickinson*, 28 Ohio St. 2d 65, 275 N.E.2d 599 (1971); *State v. McKee*, 1 Add. 1 (Pa.1791); *State v. Amaro*, 448 A.2d 1257 (R.I.1982); *Morgan v. State*, 148 Tenn. 417, 256 S.W. 433 (1923); *Harris v. State*, 28 Tex.App. 308, 12 S.W. 1102 (Tex.1889); *State v. Larsen*, 578 P.2d 1280 (Utah 1978); *Lane v. Commonwealth*, 219 Va. 509, 248 S.E.2d 781 (1978); *Huebner v. State*, 131 Wis. 162, 111 N.W. 63 (1907); *Bennett v. State*, 377 P.2d 634 (Wy.1963).

8. The Minnesota Death by Wrongful Act Statute then stated:

> When death is caused by the wrongful act or omission of any person or corporation, the personal representative of the decedent may maintain an action therefore if he might have maintained an action, had he lived, for an injury caused by the same act or omission. Minn.Stat. § 573.02 (1949).

intends the same construction to be placed upon such language."

We decline to draw that inference. Nowhere in our civil Death by Wrongful Act Statute, nor in this court's limited holding in *Verkennes* is the phrase "human being" defined. In fact, the *Verkennes* court took some pains to limit its holding to Minn.Stat. § 573.02. The court's opinion in *Verkennes* proclaims neither an expanded common law definition of "person" or "human being" for the general civil law, nor, most assuredly, does it purport to furnish an expanded definition of "human being" for the criminal law. It does not follow that because we held in *Verkennes* that next of kin might recover damages arising out of the destruction of a viable fetus in a civil action under Minn.Stat. § 573.02, that a viable fetus is a "human being" for purposes of the criminal law. This court may exercise its common law powers to fashion a remedy for a civil wrong, as it did in *Verkennes*. The Death by Wrongful Act Statute creates a civil cause of action protecting and limited to survivors' expected interest in the continued life of the unborn child. This civil statute focuses on compensating a future interest of a survivor, not a present interest of a decedent. However, this court is forbidden to use its common law power to fashion crimes for public wrongs by Minn.Stat. § 609.015 (1984) where the legislature has expressly stated "[c]ommon law crimes are abolished and no act or omission is a crime unless made so by this chapter or by other applicable statute * * *." *Id.* Notwithstanding the existence of civil tort law precedent allowing survivors' recovery of damages arising from the wrongful death of a viable fetus in their jurisdictions, appellate courts of other "code states" have expressly rejected arguments for using such tort law precedents to read the unborn into provisions of the criminal homicide law. *See, e.g., People v. Greer*, 79 Ill.2d 103, 37 Ill.Dec. 313, 315–6, 402 N.E.2d 203, 208–9 (1980); *State v. Dickinson*, 28 Ohio St.2d 65, 275 N.E.2d 599, 602 (1971); *State v. Amaro*, 448 A.2d 1257, 1259 (R.I.1982). By asking us to infer that the legislature, in enacting Minn. Stat. § 609.21 in 1963, intended "human being" to include a viable fetus in the light of *Verkennes*, the state is, in reality, urging us to declare by judicial fiat that the time has now come to prosecute under homicide statutes one who kills an unborn but viable fetus. Were we to do so, we would be drastically rewriting the homicide statutes under the guise of "construing" them. *See Keeler v. Superior Court*, 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970). The courts of our sister jurisdictions, when confronted with similar requests by prosecutors in vehicular homicide cases, have recognized, as we do, that a change of that magnitude would constitute substantive change in the criminal law within the province of the legislature. *See, e.g., State v. McCall*, 458 So.2d 875 (Fla. Dist.Ct.App.1984); *People v. Guthrie*, 97 Mich.App. 226, 293 N.W.2d 775 (1980).

The common law, case law from other jurisdictions, our rules on statutory interpretation of criminal statutes, and the statutory history have convinced us that it is not within our judicial province, under the guise of interpretation, to hold that the words "human being" as used in Minn.Stat. § 609.21 (1984) encompass a viable 8½ month old fetus. The enactment of criminal laws, the scope of those laws, and the sanctions for their violation, are solely within the legislative function and province.

Accordingly, we affirm.

YETKA, J., dissents.

PETERSON, J., took no part in the consideration or decision of this case.

YETKA, Justice (dissenting).

This court has always kept pace with the medical sciences, particularly in the field of criminal law. We have allowed into evidence new types of blood tests, powder tests to determine whether an individual has recently fired a firearm, and alcohol testing devices of all kinds.[1] Therefore, in

---

1. *See, e.g., State ex rel. Ortloff v. Hanson*, 277 N.W.2d 205 (Minn.1979) (blood tests); *State v.*

the event of criminal vehicular operation, why shouldn't we keep pace with modern definitions of when life begins?

Although *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949), involved a civil action of wrongful death, I find it persuasive that, under *Verkennes,* a viable fetus is considered a human being according to Minnesota law. This court, in *Verkennes,* found that the law is presumed to keep pace with the sciences: "Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that, though within the body of the mother, it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and capable of maintaining life."[2] *Verkennes,* 229 Minn. at 368, 38 N.W.2d at 840 (quoting *Allaire v. St. Luke's Hospital,* 184 Ill. 359, 370, 56 N.E. 638, 641 (1900)). Medical science certainly has progressed to the point of making the "born alive" rule obsolete.[3] In light of the *Verkennes* rule and of present scientific knowledge, to say this

fetus was not a human being at 8½ months is rather hard to understand.

Minn.Stat. § 645.17(4) (1984) provides: "When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language." *Verkennes* was written in 1949 and, therefore, the legislature is presumed to have. taken cognizance of the principle this court established defining a "person" or "human being" as including a viable fetus when the legislature adopted the present vehicular homicide statutes.[4] Contrary to the majority opinion, therefore, there was adequate warning to the defendant that if he killed an unborn, but viable, child while driving intoxicated, he would be prosecuted for vehicular homicide.

Much is made by the majority of the fact that the Massachusetts case of *Commonwealth v. Cass,* 392 Mass. 799, 467 N.E.2d 1324 (1984), should not be used as precedent because Massachusetts is a common law state whereas Minnesota is a code state. While this is true, *Cass* is, none-

---

*Spencer,* 298 Minn. 456, 216 N.W.2d 131 (1974) (powder tests); *State, City of St. Louis Park v. Quinn,* 289 Minn. 184, 182 N.W.2d 843 (1971) (breathalyzer tests).

**2.** The court also cited Blackstone: "Life is the immediate gift of God,—a right inherent by nature in every individual; and it begins, in contemplation of law, as soon as an infant is able to stir in the mother's womb." *Verkennes,* 229 Minn. at 368, 38 N.W.2d at 840 (quoting 1 W. Blackstone, *Commentaries* \*130).

**3.** *See* Parness, *Crimes Against the Unborn: Protecting and Respecting the Potentiality of Human Life,* 22 Harv.J. on Legis. 97 (1985):

When the live birth requirement was first established in homicide law, the uncomplicated birth of an existing fetus was viewed by scientists and medical doctors as a perilous feat. Thus, perhaps it was not inappropriate for the law to presume that a hostile act against a fetus was not the conclusive cause of that fetus's eventual failure to survive birth. Today, however, a fetus that has reached twenty weeks of maturity enjoys a high chance of survival and subsequent live birth. Unfortunately, judicial decisions and legislative enactments have not adjusted the law to

the technological developments that have significantly increased the probability of complete fetal development and live birth. Rather, the courts and the legislators have clung with dogmatic fervor to the live birth requirement for homicide statutes not expressly protective of the unborn. The result is a legal system that too often treats differently the actor whose culpable conduct terminates the existence of a nine month old fetus and the actor who causes the death of an infant which had existed independently of the mother for an instant, or for only a brief while.

*Id.* at 130–31.

**4.** Recently, this court, in *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512 (Minn.1985), held that, in a case where the legislature amended the advisory warning that must be given a suspected drunk driver, the legislature, presumably, intended to amend the law so as to no longer permit a suspected drunk driver the right to counsel before responding to a chemical test for alcohol content. Certainly, if we can read that legislative intent into denying a suspect the right to counsel, we can presume that the legislature was aware of the 36-year-old decision of this court which holds that a viable fetus is treated as a human being for all purposes under the law.

theless, noteworthy and useful since the Massachusetts court interpreted a vehicular homicide statute almost identical to ours.[5] This court still interprets the criminal code in light of the common law. Minn. Stat. § 645.08 (1984). As the *Cass* court found, the common law reasons for not recognizing the criminal death of a fetus *in utero* as a homicide were grounded in the medical and scientific limitations of the times. *Cass,* 467 N.E.2d at 1328. This traditional reasoning no longer holds true:

> We think that the better rule is that infliction of prenatal injuries resulting in the death of a viable fetus, before or after it is born, is homicide. If a person were to commit violence against a pregnant woman and destroy the fetus within her, we would not want the death of the fetus to go unpunished. We believe that our criminal law should extend its protection to viable fetuses.

*Id.* at 1329 (footnotes omitted).

The majority opinion appears even more difficult to understand since respondent concedes that, if this child had been born in the automobile before the accident or if the child had been born as a result of the accident itself and then subsequently died, there would be no question that the statute would apply. It appears to me that anyone who gets into an automobile in an intoxicated condition is aware of the possible consequences of his or her act and must be held accountable. Such a person could not know, if he were to hit another vehicle, whether he might kill a mother or an unborn child or both. It could well have been the situation here that the mother was killed and not the child and the statute would then, unquestionably, apply.

I see no possibility of prejudice to any allegedly intoxicated driver in applying the statute to the unborn, but viable, child as well as to the mother. I believe that the

principle has long been established under Minnesota law that a viable fetus is considered a human being. To deny this principle and adhere to a "born alive" rule is to not keep pace with the modern definition of when life begins. Accordingly, I would reverse the district court and remand for prosecution.

**5.** The Massachusetts statute provided in pertinent part: "Whoever * * * operates a motor vehicle while under the influence of intoxicating liquor * * * or whoever operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered and by any such operation causes the death of an-

other person, shall be guilty of homicide by a motor vehicle." Mass.Ann.Laws ch. 90, § 24G(b) (Michie/Law.Co-op.1985). As the Massachusetts court faced the issue of whether a viable fetus is a "person," so does this court face the identical issue of whether such a fetus is a "human being."