# Derrick *v.* Monette.

73  75
97  432
73  75
101  257
73  75
126  508

*Bill in Equity for Specific Performance of Contract for Sale of Lands.*

1. *Specific performance of contract; what essential to relief.*—A contract, to be specifically enforced in equity, must be affirmatively shown to be fair, just and equitable in all its parts, and its terms must be entirely settled and agreed on, leaving nothing for after negotiation and agreement.

2. *Same; contract must be distinctly alleged and proved.*—To entitle a complainant to a specific performance of a contract, the contract must be distinctly alleged, and must be established by clear and definite testimony. If the proof fails to establish the contract as alleged, or if any of its terms are left in doubt or uncertainty, relief can not be decreed.

3. *Same; when proof fails to show contract.*—D., desiring to purchase a tract of land in this State owned by M., a non-resdent, wrote to him, offering to purchase the land at $1750, to be paid partly January 1st, 1881, and the residue, January 1st, 1882, and requesting M. to fix the amount of the first payment at as small a figure as he could. To this M. replied, proposing to sell the land at the price offered, stating that he must have $1200 of the purchase-money on 1st January, 1881, and balance in twelve months, and adding: "Let me hear from you early, if you accept my proposition." To this letter D. replied on the same day it was received, enclosing for execution by M. a blank deed of bargain and sale, expressing a consideration of $1750, $1200 thereof to be paid on 1st January, 1881, and the residue on 1st January, 1882, and *naming his wife as the grantee;* and using this language in his reply: "Your acceptance of my offer at hand. I enclose a deed; please sign it. You can mail the deed to S. with directions to hand it to me, when I secure the payment of the money as stated in the deed, by notes with good security, and specifying a lien retained on the land for the deferred payment. I consider the trade closed, and hope you will write soon. You get rent this year, and pay taxes for this year." About seventeen days after the date of D.'s last letter, M., without executing or returning the blank deed, replied: "I will have to back out of the trade for my place. I have been offered more than you offered me by J., and, as I am owing him some, have concluded to trade with him;" and shortly thereafter M. died. *Held,* on a bill filed by D. against the heirs and personal representative of M. for a specific performance of the contract, that the contract for the sale of the land was never completed, and that the complainant was not entitled to relief.

Appeal from Hale Chancery Court.

Heard before Hon. Thomas Cobbs.

The bill in this cause was filed on 29th September, 1880, by Clarence Derrick against Robert B. Monette and Samuel J. Monette, seeking the specific performance of an alleged contract for the sale of a certain tract of land in Hale county in this State, between Robert B. Monette, as vendor, and the complainant, as purchaser; Samuel J. Monette being made a party defendant on averment, that he claimed the land by subsequent purchase from Robert B. Monette. On 7th October, 1880, Robert B. Monette died, and the suit was, by amendment, revived against his heirs and Samuel J. Monette as his administrator. As shown by the averments of the bill, and by the proof, the alleged contract was made, if made at all, by correspondence; the correspondence beginning on or about the 11th day of August, 1880, by a letter from the complainant, who resided at Greensboro, in this State, addressed to Robert B Monette, who then resided at or near Satartia, Mississippi, by the name of R. H. Johnson, which he had, for purposes not necessary to be here stated, assumed, proposing to purchase the land in controversy, and offering $1750 therefor, payable partly

on 1st January, 1881, and the residue on 1st January, 1882, not naming the amount of either installment, but requesting that Monette should fix the first payment at as small a figure as he could. This letter was not produced, but its contents were shown by other testimony. To this Monette, using the assumed name of Johnson, replied as follows, omitting the caption, address, and signature: "Yours of Aug. 11th is at hand, and I will reply at once. I will accept your offer of $1750 for my place, by your paying me $1200 on 1st January, 1881, and balance in twelve months. I wish to purchase a place out here, and it will take $1200 on first payment, is why I am anxious for that amount cash. Let me hear from you early, if you accept my proposition." This letter purports to have been written on 26th August, 1880; but the testimony shows that it was mailed on 21st, and was received by the complainant on 24th of that month. To this letter complainant replied on the same day, addressing Monette by his assumed name, and enclosing a blank deed for his execution. The material portions of this letter are copied in the opinion, and need not be here repeated. The blank deed enclosed is as follows: "This deed made this — day of——, 1880, by and between Mrs. Fannie Derrick, of Hale Co. Ala., and ——, witnesseth: That for and in consideration of seventeen hundred and fifty dollars—twelve hundred dollars, part thereof, to be paid on the 1st day of January, 1881, and five hundred and fifty dollars, the residue thereof, to be paid on the 1st day of January, 1882, to the grantor, the said —— doth hereby grant, bargain, sell and convey unto said Fannie Derrick four hundred acres of land, with the appurtenances thereto belonging, situated in Hale county, Alabama, and described as follows, to-wit: The east half, and the east half of the south-west quarter of section 22, township 21, range 3, east. Witness the following signature and seal, the day and date first above written." Then follows a blank certificate of acknowledgment. Nothing further passed between the parties until 10th September, 1880, when Monette still using his assumed name, wrote, refusing to proceed further with the sale. This letter is copied in full in the opinion. The deed was neither executed nor returned. On 15th September, 1880, the complainant replied to this letter, insisting that the contract for the sale of the land had been made and completed, and that the deed should be executed, and declaring his readiness to comply with his part of the contract. This ended the correspondence.

The defense set up in answer, was in substance (1) that the negotiations between the parties for the sale of the land were incomplete, and never resulted in any contract; (2) that Robert B. Monette, at the time of the correspondence, was mentally

[Derrick v. Monette.]

incapable of making a valid contract; and (3) that the contract was not fair and equitable, in that the lands were worth more than $1750, the amount offered by the complainant. The opinion does not render it necessary to set out the testimony bearing on the last two propositions.

On the hearing, had on pleadings and proof, the chancellor, being of the opinion that the complainant was not entitled to relief, caused a decree to be entered, dismissing the bill; and that decree is here assigned as error.

JAMES E. WEBB, for appellant.

THOS. R. ROULHAC, contra.

STONE, J.—One of the controlling conditions on which a contract will be specifically enforced, is that it must be fair, just and equitable in all its parts; and the party praying relief must show this affirmatively.—Moon's Adm'r v. Crowder, 72 Ala. 79. It is contended for appellee that the decree of the chancellor rendered in this cause should be affirmed, because the proof fails to come up to this standard. We have carefully examined the pleadings and testimony in this cause, and there is no ground shown for annulling the contract, if contract there was. Considering all the testimony, we are not prepared to say seventeen hundred and fifty dollars was not a reasonable price, and we think there is an utter failure to prove that Robert B. Monette, the alleged vendor, was mentally incapable of making a valid contract.

To entitle a complainant to a specific performance, the contract must be distinctly alleged, and established by clear and definite testimony. If the proof fails to establish the contract as alleged, or if any of its terms are left in doubt or uncertainty, a specific performance must not be decreed.—1 Brick. Dig. 692, §§ 768, 769. So, if the terms of the contract are not entirely settled and agreed upon, and anything is left for after negotiation and agreement, the chancery court will not interfere. To perfect an imperfect agreement, would be to make, not to enforce a contract. The rule that the contract must be so far completed as to leave nothing of material import for further negotiation, is one supported alike by reason and authority. And unless both contracting parties are bound, neither is.

The alleged contract in this case was made, if made at all, by correspondence. Derrick, the alleged purchaser, resided in Hale county, Alabama, Greensboro his post-office; and Robert B. Monette, the alleged vendor, was in Mississippi—Satartia his post-office. He wrote in an assumed name—R. H. Johnson. The statement of facts will show the correspondence in extenso,

with the exception that Derrick's first letter is not produced. That letter contained an offer by Derrick to purchase the lands, sought to be recovered in this suit.    From the reply to it, and from other testimony, we learn that Clarence Derrick, complainant in this cause, proposed to purchase the lands at the price of $1750, to be paid partly, January 1st, 1881, and the residue, January 1st, 1882, with a request that Monette, *alias* Johnson, fix the first payment at as small a figure as he could.    Monette's reply to this bears date August 26th, but there is shown to be a mistake in this date.    This reply letter was received by Derrick August 24th.    In it he proposed to sell his lands at the price offered—$1750—but stated he must have $1200 of the sum, January 1st, 1881, and balance in twelve months; adding: "Let me hear from you early, if you accept my proposition." To this Derrick replied on the same day—August 24th.    With his reply he inclosed a blank deed to be executed by Monette, *alias* Johnson.    That paper is also shown in the statement of facts.    The deed is one of bargain and sale, without express covenants of warranty, blank as to the name of the grantor and date, Fannie Derrick the grantee, and expressing the consideration of "seventeen hundred and fifty dollars—twelve hundred dollars, part thereof, to be paid on the 1st day of January, 1881, and five hundred and fifty dollars, the residue thereof, to be paid on the 1st day of January, 1882, to the said ———————." The letter inclosing this blank deed contains the following language: "Your acceptance of my offer at hand.    I inclose a deed; please sign it.    .    .    You can mail the deed to T—S— with directions to hand it to me, when I secure the payment of the money as stated in the deed, by notes with *good* security, and specifying a lien retained on the land for the deferred payment.    .    .    I consider the trade closed, and hope you will write soon.    You get rent this year, and pay taxes for this year." The deed was never executed.    September 10th, 1880, Monette replied: "I will have to back out of the trade for my place. I have been offered more than you offered me by Jack, and as I am owing him some, have concluded to trade with him." Monette died October 7th, 1880.

It will be observed that this negotiation commenced in a written offer of a specified sum for the lands, to be paid in two installments, but leaving open for negotiation the matter of dividing the sum into the two installments.    The answer agreed to accept the price offered, and specified the amounts he would require in each of the installments; being a little more than two-thirds in the first.    At this stage of the correspondence, it is manifest, no contract, binding the parties, had been agreed upon. Derrick was not bound to accept the land—could not have been coerced to specifically perform the alleged contract, for none

[Derrick v. Monette.]

had been made. Not being bound himself, Monette was not bound. Up to this stage the correspondence was by Clarence Derrick, and in his name. He it was who proposed to purchase. The name of Mrs. Fannie Derrick as a purchaser had not been mentioned. The question of contract *vel non* must, then, depend on Derrick's reply to this letter of Monette, declaring the division of the installments. If he had simply replied to Monette, accepting his terms without more, we will not say this would not have constituted a binding contract. Contracts of bargain and sale of lands on credit are, in this State, usually conducted in one of two forms. Either a bond to make title is executed by the vendor, thus retaining the title as security for the purchase-money; or a conveyance is made, the vendor contemporaneously receiving back a mortgage of the premises, to secure the payment of the purchase-money. Possibly, these implications, coming in aid of the very general language employed in the negotiation, would, in the case supposed, have justified the specific enforcement of the contract. But we need not decide this.

At this stage of the negotiation, we are met with additional propositions. The first is, that title shall be made to Fannie Derrick, a married woman, wife of Clarence Derrick, who had made the overture of purchase. This was the introduction of a new name as purchaser, not theretofore proposed. If it be said, this change could not have injuriously affected Monette, the answer is, that that is not the question. Contracts can only be specifically enforced as they are made. On a bill alleging and proving one contract, the chancery court will not decree the execution of another at the request of the complainant, merely because it is no more burdensome to the defendant than the contract he did make. To test this, let us suppose the bill had been filed by Mrs. Derrick, praying that title be decreed to her. Every one will concede she could obtain no relief, on the allegations and proof found in this record. The reason is, that not only had no contract been made with her, or in her name, but there had been no offer to purchase in her name. If necessary, it may be supposed Monette was unwilling to convey title to a married woman, the purchase-money remaining unpaid. But the law does not require that Monette should give any reason for refusing to execute a contract he had neither made, nor offered to make.

It is urged, however, for appellant, that Derrick accepted Monette's offer absolutely, and merely proposed, not as a condition, but for convenience sake, to have the title made to his wife. We do not so understand the letter. When that letter was written, only three particulars of the contract had been agreed upon; the price, the division of the installments, and when

they should severally mature. How or when the conveyance should be made, and how the purchase-money should be secured, had not been mentioned. Suppose Monette, when he received the letter and the blank deed, had been unwilling to convey the title to a married woman, or had been unwilling to part with the title, until the purchase-money was secured by a mortgage he could have had recorded, or until the purchase-money was paid; and suppose he so informed Derrick. Then suppose Derrick declined to take further steps in the purchase. Could Monette, on a bill against Derrick, compel him to specifically execute the contract in his own name as purchaser, and securing the purchase-money in one of the modes common in our land sales? Would not a complete answer to such complaint be, that Derrick's acceptance was given on the condition that title should be made to Fannie Derrick, and the purchase-money secured in the manner proposed in the letter of August 24th? Negotiations never were finished; the contract never was completed. "Letters will not constitute an agreement which will be specifically performed, unless the answer is a simple acceptance, without the introduction of a new term. . . If the contract be not actually concluded and certain in all its parts, as if the matter still rests to any extent in treaty, or be uncertain or undefined in any particular, a court of equity will not interfere by way of specific performance."—1 Sto. Eq. Jur. § 736 c; Lyman v. Robinson, 14 Allen, 242; Cunton Co. of Baltimore v. Northern Cen. Rw'y Co., 21 Md. 383.

It is no answer to these views, that Monette, in his final note, said he must back out from the trade, giving as a reason that another had offered him a better price. He had made no contract in writing, by which he was bound, and hence, he had the right to retire from the negotiation for an insufficient reason, or for no reason. If this writing proved he thought he had made a binding contract, when he had not, that would not help the appellant. Neither in that note, nor in any other writing brought to our knowledge, did he express assent to the new terms found in Derrick's letter of August 24th.

The decree of the chancellor is affirmed.