# Rider *v.* Wood.

### *Action for Breach of Contract.*

1. *Contract; what necessary.*—To constitute a contract between two parties, it is necessary that there should be a meeting of the two minds in the thing to be done, so as to show mutual agreement or assent.

2. *Same: same; sale.*—Negotiations, or proposals between parties, looking to a sale, are never obligatory until they are accepted, and so long as an important term of a proposition

[Rider v. Wood.]

remains unaccepted or unagreed to by either of the parties, their minds have never met and there is lacking that element of mutual assent essential to a contract and, therefore, in the absence of this mutual agreement, or assent, the negotiations of the parties amount to nothing more than mere offers, which may be finally rejected by either party without imposing any liability whatever.

APPEAL from the City Court of Birmingham.

Tried before the Hon. WILLIAM W. WILKERSON.

This was an action brought by the appellee, E. W. Wood, against the appellant, Preston Rider, to recover damages for the breach of a contract. The facts of the case are sufficiently stated in the opinion.

The cause was tried by the court without a jury; and upon the hearing of all the evidence, the court rendered judgment for the plaintiff, assessing his damages at $217.92, and from this judgment, defendant appeals and assigns the rendition thereof as error.

W. K. BROWN and S. D. MURPHY, for appellant.

SAMUEL WILL JOHN, contra.

TYSON, J.—This action is brought to recover damages for the breach of a contract which it is alleged was entered into between the plaintiff and defendant, whereby the latter agreed to deliver to the former seven hundred cases of canned corn at and for a stipulated price. The important question presented is whether the minds of the parties ever concurred as to the terms of the alleged contract. In short, whether the plaintiff bound himself to receive the corn and whether the defendant was obligated to deliver it. For if there was no *aggregatio mentum*—no meeting of the two minds in the thing to be done—neither of them was bound, and there was, of course, no agreement for a sale.

Negotiations or proposals between parties looking to a sale, are never obligatory until they are accepted. And so long as an important term of a proposal remains unaccepted or unagreed to by both parties, their minds have never met—there is lacking that element of mutual

[Rider v. Wood.]

assent so essential to every agreement. In the absence of this element, the negotiations between the parties amount to nothing more than mere offers, which may be finally rejected by either without imposing any liability whatever.—*Bissinger v. Prince,* 117 Ala. 480. All negotiations between the plaintiff and defendant were in writing and evidenced by letters that passed between them. These negotiations were opened by the plaintiff by letter of date June 12th, 1901, addressed to the defendant in Columbus, Indiana, his place of business, requesting him to quote his lowest price for best grade of standard corn f. o. b. Birmingham, Ala., 800 to 1,000 cases; also requesting his terms and a sample of the corn. The defendant replied, quoting the price at 60c per doz. net at 15c per 100 lb. allowance; terms regular. Also telling plaintiff he could get sample of corn from Collins & Co. of his city. On receipt of this letter plaintiff asks for the lowest price of corn delivered f. o. b. Birmingham, Ala., 800 cases net privilege of another car, etc. Again defendant replied quoting price at 65c per doz. and stating the freight to be 34c from his place to Birmingham. Plaintiff then wrote: "You may enter my order for one car of best grade standard 2 lb. canned sugar corn at 65c per doz. f. o. b. track in Birmingham, Ala., regular terms, with privilege of two cars of same corn at some price. * * * I want the quality of the corn a little improved and a little sugar used in it, if you think it advisable. * * * I want as good corn as can be had for a standard grade, tender and sweet." Defendant wrote him: "We have booked your order for a car of 2 lb. sweet corn, but you did not say how many cases you wanted. We can put 700 to 1,200 cases in a car. You being a stranger to us and a new customer we will have to have reference as to your financial standing." Plaintiff in his reply to this letter failed to definitely designate the number of cases he wanted, but said: "I presume I shall want about 1,500 cases in two shipments," and also failed to furnish the reference as to his financial standing that was required. He stated in that letter that he was sending a sample of the corn that he had been selling for another concern and wanted to know if the corn that the defendant proposed to ship him was equal in every respect to that sample.

Up to this point, it is clear that the plaintiff himself had not agreed to be bound, whatever may have been the attitude of the defendant. Again the defendant after acknowledging receipt of the sample sent him and assuring the plaintiff that his corn was equally as good as the sample, inquired of him how many cases he would want; also stating that it was important to know this fact so as to know how many cases he had actually sold in order that he might not sell more than he expected to pack. As the defendant's business was that of canning corn, fruit, etc., it is clear that the reason he assigned for wanting the information inquired for was entirely reasonable. To this plaintiff replied that he would want "1,300 cases, 2 doz. to case, 2 lb. cans at least, and may want 1,500 cases. One car to be shipped about Oct. 1, or perhaps last of September, 1901, and the other car to be shipped during the spring of 1902." Also expressing himself as being *"exceedingly* anxious about the quality of the goods, that it is good and in every particular up to the goods I have been selling for eight years," etc. Defendant in reply to this proposition declined it and made a counter offer to sell plaintiff, saying: "We have booked your order for one car of 700 cases as per your letter of June 18th." And repeated his demand for reference as to plaintiff's financial standing. This brings us to a consideration of the letter written by plaintiff upon which turns the question that is decisive of this case. Did plaintiff signify in it his unqualified acceptance of the proposal to sell him the 700 cases as per his *letter of June 18th?* The letter of June the 18th, it will be well to note, was written prior to the sending by plaintiff to defendant of the sample of corn formerly sold by him. That letter was evidently written after plaintiff had gotten a sample of defendant's corn from Collins & Co., for he says: "I want the quality of this corn a little improved and a little sugar used in it, if you think it advisable." Continuing, he says: "I want to continue to use the brand always and I want as good corn as can be had for a standard grade, tender and sweet." It was with reference to the quality of the corn thus named that defendant made the offer to ship the 700 cases, and not with reference to the sample sent to him by plaintiff.

Repeating the question propounded above, did plaintiff accept the offer? To show that he did not, we have only to quote his letter: "In reply to yours of the 23rd inst. saying you have booked my order for 700 cases of corn as per my letter of June 18th. If I want 20 cases more can I get them? Please let me know at once. Remember in yours of July 6th you agree to give me corn equally as good as the sample I sent you, let me *impress* upon you the importance of doing that very thing, for I am guaranteeing the corn equal in every respect to the sample I sent you and if it falls short I will have trouble with it and should in such event look to you to make it good."

It is scarcely necessary to point out that the plaintiff did not unequivocally say, that he would take the 700 cases. Besides he injected into the proposition made to him another important term or stipulation which had to be accepted by defendant before the latter could be held to have bound himself. That term was in substance that defendant should obligate himself to guarantee the corn to be equally as good as the sample sent him. The defendant rejected this, as he had the right to do, and cancelled the order which he had booked for the 700 cases. There was some further correspondence between them relating to the refusal of the defendant to enter into the contract, which, however, is not material to be here noticed, since it does not involve the making of a contract.

We feel constrained to hold that the parties never reached the point of an agreement and the plaintiff is not entitled to recover. A judgment will be here entered for defendant.

Reversed and rendered.