(89 South. 855)

## L. F. SEYFERT'S SONS, Inc., v. DONAHOO.
### (6 Div. 775.)

(Court of Appeals of Alabama. April 5, 1921.)

1. Sales ⊚⟿22(3)—Proposals not obligatory until accepted.

Negotiations or proposals looking to a sale are not obligatory until accepted, and, so long as an important term remains unaccepted or unagreed to by both parties, the negotiations amount to nothing more than mere offers, which may be finally rejected by either party without imposing any liability; their minds not having met.

2. Sales ⊚⟿23(2)—Where terms of sale not agreed on and check tendered on condition sale be consummated according to buyer's terms, seller's retention of check was without warrant; no right of forfeiture existing.

Where the parties to a sale contract did not agree as to the terms of payment, and the seller, when he received a check from the buyer, understood that it was tendered on condition that the sale be consummated according to the buyer's terms, his refusal to return such check on the buyer's demand was without warrant, no right of forfeiture existing, since no contract was made.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by L. F. Seyfert's Sons, Incorporated, against J. F. Donahoo. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Robert E. Smith, of Birmingham, for appellant.

The court erred in holding that the terms of the contract were fully agreed on, and therefore that the minds of the parties had met. 35 Ala. 607; 37 Ala. 706; 50 Ala. 448; 56 Ala. 24; 2 South. 892; 9 Cyc. 267.

Haley & Haley, of Birmingham, for appellee.

Counsel discuss the facts in the case, with the insistence that the finding of the court was proper; but they cite no authority in support of their contentions.

MERRITT, J. This action is brought by the plaintiff, appellant, to recover money paid to the defendant, appellee, as a part of the purchase price of certain machinery. The plaintiff stated its case through the common counts; the defendant pleaded in short, etc. The trial court, trying the case without jury, rendered judgment for defendant, and plaintiff appeals.

The only point seriously insisted upon is the propriety of the judgment rendered. The solution of this inquiry depends upon the further inquiry, viz.: Was there such a meeting of the minds of the parties as constituted a completed contract of sale? We will briefly summarize the facts.

On November 21, 1917, the plaintiff, engaged in business at Philadelphia, opened negotiations with defendant at Birmingham, through a letter inquiring whether defendant had for disposal a certain type of hoisting engine, and stating that plaintiff was in the market for same. The defendant replied in the affirmative, naming a price "f. o. b. Greenville, Miss." Several communications then followed between the parties, the effect of which, in the end, was that the defendant offered to sell to the plaintiff two certain hoisting engines at a price of $2,350

---

⊚⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

f. o. b. Greenville, Miss., $200 to be paid in cash and the balance to be paid upon delivery of the engines to the carrier; the plaintiff offering to purchase the engines at the price named and to make the named cash payment, but injecting the condition that the balance should be paid, in the form of a draft attached to the bill of lading, upon arrival of the engines at Philadelphia, the point of destination—predicating this condition upon its desire to inspect the engines before final acceptance. Through succeeding communications defendant insisted upon the exact terms of his original offer to sell, and plaintiff reiterated the conditions of its offer to buy.

On December 7, 1917, the plaintiff wrote to the defendant, inclosing a check for $200, "on account," and "with the understanding these outfits are complete and in first-class operative and serviceable condition, and in accordance with your letter of the 26th ultimo, in which you stated they were in equally as good condition, if not better than when you received them from us. * * * We understand you will ship these on or about January first, 1918. The balance, $2,150.00, to be paid sight draft against bill of lading on arrival of engines at Philadelphia."

On December 10, 1917, defendant wired plaintiff as follows:

"Your letter with check will accept only upon balances paid against shipping documents first nat. bank here wire us or we will return check and sell engines elsewhere."

On the same date the plaintiff wired the defendant: "If our proposition and terms are not satisfactory, return check."

On the same date the defendant wrote the plaintiff:

"This is to acknowledge receipt of your letter just received inclosing check for $200.00, advance payment on two * * * hoisting engines * * * to be delivered f. o. b. cars Greenville, Miss., on or before January 15th. The remainder of $2,150.00 to be paid on delivery B/L First National Bank, Birmingham, Ala. Thanking you very kindly for the order."

On December 13, 1917, the plaintiff wrote the defendant in reference to the letter and telegram sent by the defendant. In this communication the plaintiff expresses "surprise" at receiving the letter after the telegrams exchanged on the 10th of that month, as set out above, and proceeds with a restatement of the conditions under which the plaintiff will purchase, viz.:

"* * * You may enter our order for the two engines in accordance with our letter of the 7th inst. in which we inclosed our check for $200 on account, with the distinct stipulation, however, that the balance was to be paid sight draft against bill of lading on arrival of engines at Philadelphia. We exacted this condition for the reason that we think it only fair to ourselves that we have an opportunity of seeing these engines before the balance, $2,150.-

00, is paid. If this is not satisfactory, please return our check for $200.00 as stated in our wire of December 10th replying to your wire of the same date. * * * Either accept our order as per our letter of the 7th inst., or return check sent you for $200.00 by return mail."

On December 21, 1917, the defendant wrote the plaintiff in reply to plaintiff's said letter of the 13th, stating that during the negotiations defendant had "turned down" several customers who had bid for the engines; that the defendant regarded the sale as closed; and suggested that the plaintiff avail of the services of the Pittsburgh Testing Laboratory, with an office in Birmingham, and stating that if an examination by the laboratory disclosed that the engines were not as represented defendant would be glad to return the check. It was further stated in the letter that the defendant intended to leave for Boston on the following day and would likely call to see the plaintiff on his return about January 2d.

On January 7, 1918, the plaintiff wrote the defendant as follows:

"Your letter of the 21st ultimo was duly received. We delayed answering same expecting you would call here to see us en route from Boston, as you suggested in your letter. At all events, we can only reiterate what we have already said in connection with this matter, and will ask you to ship the hoisting engines in accordance with our letters of December 7th and 13th. When will engines be available for shipment?"

Again on January 9, 1918, plaintiff wrote the defendant:

"Supplementing our letter of the 7th instant, we must ask you to either ship the machinery or return our check. The latter was sent you on the understanding that you would accept the terms of our letter, and you wired us that unless we acceded to your demands you would return the check. Under these circumstances, as you elect to retain the machinery, we must ask you to return the check."

On January 12, 1918, the defendant wrote the plaintiff acknowledging plaintiff's letters of January 7th and 9th. This letter states nothing with respect to the terms of the proposed contract, but undertakes rather to explain the delay in shipping the engines. It states that Mr. Donahoo was absent, but had given instructions that the engines be ready for shipment by January 15th. On January 17, 1918, defendant wrote a similar letter, explaining further delay in the shipment of the engines.

On February 1, 1918, the defendant wired the plaintiff as follows: "Engines at depot ready to load no instructions from bank." The plaintiff replied, by letter dated February 2, 1918, that it had taken up the matter of inspection with the Pittsburgh Testing Laboratories; that that concern had agreed to instruct its representative at Birmingham to call on the defendant, ascertain the where-

abouts of the engines, and make the inspection. The letter proceeds:

"We trust, therefore, that you will afford their inspector every facility for making an examination of these engines, and as soon as he hands us his report, we will then be in position to state whether you can ship the engines immediately or return us our check."

It is thus to be seen that up to this point the parties had arrived at no common agreement with respect to the very important element of the terms of payment. True it is that the appellant had sent its check charged with knowledge of defendant's stated terms, but it was not sent in accordance with those terms. To the contrary, the check was tendered with a distinct condition that the sale should be consummated according to plaintiff's terms, viz., that the balance should be paid after arrival of the engines at the point of destination. That defendant understood these terms when he received the check, and that he did not propose to retain it and fulfill the proposed contract of sale under these terms, is beyond question. Defendant's telegram of December 10, quoted above, is conclusive on this point.

[1] "Negotiations or proposals between parties looking to a sale are never obligatory until they are accepted. And so long as an important term of a proposal remains unaccepted or unagreed to by both parties, their minds have never met. * * * In the absence of this element, the negotiations between the parties amount to nothing more than mere offers, which may be finally rejected by either without imposing any liability whatever." Rider v. Wood, 138 Ala. 235, 236, 237, 35 South. 46; Sanford v. Howard, 29 Ala. 684, 68 Am. Dec. 101; Hart v. Bray & Bros., 50 Ala. 446; Bissinger v. Prince & Blackman, 117 Ala. 480, 23 South. 67; 35 Cyc. 55; Southern Loan & Trust Co. v. Gissendaner, 4 Ala. App. 523, 58 South. 737; Derrick v. Monette, 73 Ala. 75.

[2] Lacking mutuality upon the stated element of the proposed sale, there was hence no contract. Defendant's right to withhold this check, against plaintiff's demand, is to be justified alone upon the theory of an effectual contract of sale and failure by the plaintiff to perform some condition thereof. Since no such contract was made by the parties, the right of forfeiture did not exist; and defendant's withholding of the check was without warrant.

Subsequent to the communication last mentioned, an inspection was made of the engines at the place of proposed shipment, and the result of such inspection reported to the plaintiff. Thereupon plaintiff wired the defendant proposing an adjustment on account of certain defects or deficiencies in the engines as disclosed by the inspection, upon acceptance of which proposed adjustment plaintiff expressed itself as "inclined" to order out the engines. Defendant declined the plaintiff's proposal in the premises and proposed a different adjustment, reinsisting upon its former demand, that payment of the balance be made by deposit thereof with a Birmingham bank subject to defendant's withdrawal upon delivery of shipping documents. The plaintiff in turn declined to meet these conditions, and asked that defendant ship according to its previous offer and terms, or to return the check in question. Defendant assumed to retain the check as a forfeit.

What we have said of the negotiations prior to the disagreement with respect to the defects in the engines is sufficient to decide this case. Up to that point no mutuality of contract had been arrived at by the parties. These latter communications brought them no nearer into agreement, but served rather to introduce further elements of difference. The trial court therefore erred in rendering judgment for defendant. That judgment is reversed, and one will be here rendered in favor of the plaintiff, appellant, for $200, the amount sued for, with interest from December 7, 1917, together with the costs in the circuit and appellate courts.

Reversed and rendered.

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes