HEUBNER, Plaintiff in error, vs. THE STATE, Defendant in error.

*February 23—March 19, 1907.*

*Criminal law and practice: Separation of jurors: Preliminary remarks by judge to jury: Improper statements by counsel: Immaterial errors: Murder: Evidence.*

1. Mere separation of the jurors before they were impaneled and sworn is not ground for reversal of a conviction in a capital case.
2. A cautionary statement by the trial judge to the jury before the examination of witnesses, as follows: "You will listen to the evidence of each of the witnesses, and bear in mind the appearance of the witnesses upon the stand and the impress that the evidence of these witnesses makes upon your mind, and especially as to whether the evidence is credible or truthful or is not the truth," *held* entirely proper.
3. Where the district attorney in his opening remarks to the jury improperly stated that he expected to prove a certain fact, but the trial judge promptly stopped him and stated that such proof would not be allowed, and there was no objection or exception taken to the remark and no request for any instruction or caution to the jury on the subject, there was no prejudicial error.
4. Upon a prosecution for the murder of defendant's bastard child, the evidence is *held* sufficient to show that the child was born alive and had an independent existence with respiration and circulation before the act was committed.

'APPEAL from a judgment of the circuit court for Price county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

Heubner v. State, 131 Wis. 162.

For the plaintiff in error there was a brief by *James Smith*, attorney, and *G. E. Schwindt*, of counsel, and oral argument by *Mr. Schwindt*.

For the defendant in error there was a brief by the *Attorney General* and *J. E. Messerschmidt*, state law examiner, and oral argument by *Mr. Messerschmidt*.

Winslow, J. The plaintiff in error was prosecuted upon the charge of murdering her newly-born bastard child. It appeared that the child was found dead in an outbuilding or henhouse on the premises of the accused where the delivery had taken place a few hours previously, with a cloth or rag wrapped several times around its neck and another rag stuffed in its mouth. No one was present when the delivery took place except the mother herself. There was a spring lock on the door of the henhouse, and it appears that the accused came out of the henhouse shortly after the birth, shutting the door and leaving the baby in the building, and made her way with the help of a daughter to her dwelling, where she went to bed and a physician was called. She testified that she remembered nothing after the birth of the child. There was evidence showing that the door of the henhouse was locked and that no person had access to it after the birth and before the child was found until the physician who had been summoned to attend the accused went to the henhouse and found the child in the condition described. There was a verdict of murder in the first degree, and the accused sued out a writ of error to reverse the judgment rendered on the verdict. The errors alleged will be considered in their order.

1. The jury was finally selected and the challenges on both sides exhausted near the close of a day's session, and the court allowed the jury to separate for the night under a strict caution not to speak with any one concerning the case. Upon the following morning at the opening of court the jurymen took their places, and, after having severally satisfied the court

in answer to questions that they had obeyed the instructions of the court during the recess, they were sworn and the trial commenced. It is claimed that the court committed prejudicial error in allowing the jurymen to separate, although they had not yet been sworn. We have not been referred to any authorities in support of this proposition. The rule is well settled that, if a jury in a capital case is allowed to separate during the trial, a verdict of conviction will be set aside unless it be made to appear positively that such separation was not followed by improper conduct on their part nor by any circumstance calculated to exert an improper influence on the verdict. *State v. Dolling,* 37 Wis. 396; *Hempton v. State,* 111 Wis. 127, 86 N. W. 596. This rule only applies, however, after the jury has been sworn and the trial commenced. This court has held that where eleven jurors accepted by the parties in a capital case were allowed to separate before the panel was filled, and it did not appear that any of them had been improperly influenced, no prejudicial error was committed. *Clifford v. State,* 58 Wis. 477, 17 N. W. 304. The weight of authority supports the proposition that mere separation of jurors before they are impaneled and sworn is not ground for reversal. 12 Cyc. 673; *State v. Burns,* 33 Mo. 483.

2. After the jury was sworn and before the examination of any witness the trial judge made some general cautionary statements to the jury as to their duties during the trial, among which was the following:

"You will listen to the evidence of each of the witnesses, and bear in mind the appearance of the witnesses upon the stand and the impress that the evidence of these witnesses makes upon your mind, and especially as to whether the evidence is credible or truthful or is not the truth."

This statement is complained of, but we have been unable to see upon what substantial ground. It seems to us to have been entirely proper, and certainly cannot be considered prejudicial.

3. The district attorney, in his opening remarks to the jury, stated that he expected to prove that five or six years before the alleged murder the accused gave birth to a bastard child, and the court immediately stated that unless he had authority for the admission of such evidence he would not be allowed to prove the fact. The district attorney refrained from further statement on this line, and no objection or exception was taken to the remark, nor was the court requested to give any charge or caution to the jury on the subject. The statement of the district attorney was probably improper, although it appears from the record that he had a theory that he would follow the proof by evidence showing that the accused was subjected to public odium on account of the birth of the former bastard, and hence had a reason for concealing the birth of the second bastard. The court, however, promptly and decisively stopped the remarks at the beginning, and would doubtless have given an instruction or warning to the jury to disregard the statement had it been requested. In view of the prompt action of the court, we are unable to say that there was any prejudicial error in the remark.

4. It is contended that there was no sufficient evidence to show that the child was born alive and had an independent existence with respiration and circulation before the act was committed. This claim seems to be entirely unfounded. Three physicians took part in the *post mortem* examination of the body, and it appeared that numerous tests were made of the lungs, stomach, and intestines, and that all tests showed that they contained air, and that this was practically conclusive evidence that the child had breathed several times; that the ears stood out from the head; that the hair was dry and clean; that there was no putrefaction; that there was discoloration of the skin of the neck; and that the lungs gave out a crackling sound when pressed—all of which characteristics would have been absent had the child been stillborn. From their examination the physicians all testified that in their

judgment the child was born alive and breathed, and that its, death was caused by strangulation and asphyxiation resulting from the cloth wrapped around its neck and the rag shoved into its mouth.

After a careful examination of the record we are compelled to say that the proof seems ample to sustain the verdict of murder, and that the trial was in all respects fair and free from prejudicial error.

*By the Court.*—Judgment affirmed.