## THURL MORGAN *v.* THE STATE.*

(*Knoxville.*   September Term, 1923.)

1. HOMICIDE.   Evidence. held insufficient to show birth alive of alleged murdered child.

In a murder prosecution, evidence *held* insufficient to show that an illegitimate child, claimed to have been murdered, was born alive. (*Post, pp.* 415, 416.)

2   HOMICIDE.   Child must be born alive to be subject to ''murder;'' ''reasonable creature in being.''

In a prosecution for murdering a child under the Code restricting "murder" to the killing of a "reasonable creature in being," the child must be born alive. (*Post, p.* 416.)

Code cited and construed: Sec. 6438 (T.-S.).

3. HOMICIDE.   Proof of respiration by newborn child generally establishes independent existence.

In a prosecution for murdering a child at time of birth, if respiration is established, that generally establishes an independent existence, but the test is not infallible. (*Post, pp.* 416, 417.)

Cases cited and approved: Rex v. Poulton, 5 Car. & P., 329;  Rex v. Enoch, 5 Car. & P., 539;  Rex v. Brain, 6 Car. & P., 349;  State v. Winthrop, 43 Iowa, 519;  Clarke v. State, 117 Ala., 1;  Harris v. State, 28 Tex. App., 308.

4. HOMICIDE.   Child may be murdered by bruises or poison administered before birth.

If after birth alive, an infant dies by reason of a potion or bruises received in its mother's womb, it is murder by the one who administered or gave them. (*Post, pp.* 417-418.)

---

*On application of the rules of homicide to the killing of an unborn child, see notes in 63 L. R. A., 909 and 49 L. R. A. (N. S.), 582.

FROM GRAINGER.

Appeal from the Circuit Court of Grainger County.— HON. JAS. L. DRINNON, Judge.

HICKEY & CORUM, for Morgan.

CHARLES L. CORNELIUS, Assistant Attorney-General, for the State.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The plaintiff in error was indicted for the murder of an "unnamed male infant child of Jennie Watson," and has been convicted of murder in the second degree, and has appealed in error to this court.

Jennie Watson is a young woman, unmarried, who lived in Grainger county. On the night of September 13, 1921, she gave birth to a child. Previously she and the plaintiff in error had maintained illicit sexual relations, although he denies that any of these acts occurred at a time that would have permitted of his being the father of the child.

The girl testified that, on the night her baby was born, she went out of the house clothed in her nightgown, with a percale dress thrown around her shoulders. Without going into the details, she said that plaintiff in error met her outside the house, and that they went a short distance to a place near her father's barn, where she gave birth to the child. According to her testimony, the plain-

Morgan v. State.

tiff in error and no one else was present during her par-turition, and he was guilty of acts of unspeakable brutality in an endeavor to hasten her delivery. She stated that she went back into the house a little while after the baby was born. She said that she never saw the infant, did not know what became of it, and did not know whether it was born dead or alive. About three days thereafter the body of a dead infant was found floating in a creek nearby. Its head was crushed as though it had been struck with or against some hard substance.

Considerable proof was introduced by the state tending to corroborate the girl's testimony, and much proof was introduced by the defendant tending to acquit him of participation in making away with this infant. As stated above, he admitted that he had in times past enjoyed the favors of the young woman, but testified that he was not the father of the baby, and denied that he was present when the child was born, and undertook to establish his presence at his own home, some three miles away, on the night in question.

We forbear a further discussion of the evidence, since the case must be reversed on account of the failure of the State to show that a murder was committed. In other words, there is no satisfactory proof that this baby was born alive.

After the body of the infant was recovered what is called the hydrostatic test was employed in an effort to ascertain whether the child was born alive. That is to say, the lungs of the child were removed from the body, and placed in a vessel of water. If a baby has breathed, and there is air in the lungs, they will float, and ordinarily it can be determined in this way whether a baby breathed

or lived after its birth. In this case the lungs did float, but it seems that decomposition had set in, and gas had formed in the child's body when it was found, and the medical testimony is that gas in the lungs would cause them to float just as air would.

Three doctors were examined, and two of them declined to express an opinion that this baby was born alive under the circumstances appearing. The other doctor did appear to think that the baby was born alive; that sufficient gas had not formed in the body to get into the lungs, but his testimony was by no means positive.

In this condition of the record, where proof of the *corpus delicti* depends altogether on the expert testimony, and that testimony is so unsatisfactory, we feel that we could not affirm the judgment below.

The definition of murder contained in our Code is as follows:

"If any person of sound memory and discretion, unlawfully kill any reasonable creature in being, and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of murder." Thompson's Shannon's Code, section 6438.

This is the same definition given by Lord Coke, Co. 3 Inst. 47, and by Blackstone, 4 Bl. Com. 195, except that in England the act is committed "under the king's peace" and here it is committed "under the peace of the State."

In order to become a "reasonable creature in being," a child must be born alive. It cannot be the subject of a homicide until it has an existence independent of its mother. It is usually said that the umbilical cord must have been severed, and an independent circulation estab-

Morgan v. State.

lished. Ordinarily, if the child has breathed, this would show independent life. But this test is not infallible. Sometimes infants breathe before they are fully delivered, and sometimes they do not breathe for quite a perceptible period after they are delivered. Generally, however, if respiration is established, that also establishes an independent circulation and independent existence. *Rex* v. *Poulton,* 5 Car. & P., 329; *Rex* v. *Enoch,* 5 Car. & P., 539; *Rex* v. *Brain,* 6 Car. & P., 349; *State* v. *Winthrop,* 43 Iowa, 519, 22 Am. Rep., 257; *Clarke* v. *State,* 117 Ala., 1, 23 South., 671, 67 Am. St. Rep., 157; *Harris* v. *State,* 28 Tex. App., 308, 12 S. W., 1102, 19 Am. St. Rep., 837. See, also, Brill's Cyc. Crim. Law (1923), vol. 1, section 601, and 29 C. J., 1050, where all the decisions are collected.

Since the case is to go back, it should be noted that the injuries inflicted upon a child which cause its death need not necessarily be inflicted after its delivery. The child must be born alive, but if, after birth alive, it dies by reason of a potion or bruises received in its mother's womb, it is "murder in such as administered or gave them." 2 Cooley's Blackstone, 197; 3 Russell, Crimes (6th Ed.) 6.

It has always been difficult to procure conviction in cases like these. The necessary evidence is hard to obtain. In England there is a statute making it a crime to conceal the birth of an infant, and reference to the English cases will show that most of the convictions obtained are of concealment and not of murder.

In Scotland, the practice of making away with new-born children became so common and the difficulty of conviction was so great, Parliament enacted for that country certain presumptions in such cases to take the place of proof. A case arising under this law, it will be remem-

Morgan v. State.

bered, was the basis of Sir Walter Scott's beautiful story, The Heart of Midlothian.

We have no statute in Tennessee like those mentioned, and the State will have to do the best it can under our homicide statutes upon another trial. The evidence before us now is clearly insufficient to sustain a conviction.

Reversed and remanded for another trial.