SEABOURN *v*. STATE.

5063                                              365 S. W. 2d 133

Opinion delivered February 25, 1963.

*Martin L. Green, Edward E. Bedwell* and *J. Sam Wood,* for appellant.

*Jack Holt, Jr.,* Attorney General, by *Jack L. Lessenberry,* Chief Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. Appellant, Billy Seabourn, was charged in Sebastian County with murder in the first degree in the killing of George Schuh, a soldier. He was convicted of murder in the second degree, sentenced to 21 years in the penitentiary, and has appealed.

Appellant owned and operated the Hi Boy Bar in Ft. Smith. There are two rooms. In the front room there are booths, a bar where beer is dispensed, and a music machine. In the back room there are booths, a small dance floor, and a speaker connected with the music machine.

About 1 a. m. on June 28, 1962, appellant, while in his place of business, shot and killed George Schuh, a private in the Army. Schuh was shot in the back of the head with a .38 caliber pistol held in the hands of appellant, who claims that the shooting was accidental while acting in self defense.

The principal contention of appellant on appeal is that the evidence is not sufficient to sustain a conviction of murder in the second degree.

Ark. Stats. 41-2201 provides: "Murder is the unlawful killing of a human being, in the peace of the State, with malice aforethought, either express or implied". 41-2205 defines murder in the first degree as: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of or in the attempt to perpetrate, arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree." All other murder is murder in the second degree. Ark. Stats. 41-2206.

On appeal, the evidence must be viewed in the light most favorable to the State. *Wooten* v. *State*, 220 Ark. 750, 249 S. W. 2d 964.

Appellant did not work at the Hi Boy Bar on the day of the killing. There were two employees on duty, Jack Jones, the bartender, and Ellen Rink, a waitress. Appellant was in and out of the place two or three times that day. The last time he went there was shortly after 10 p.m. and he stayed until after the killing, which occurred about 1 a.m. He drank several beers.

Beer was not served after 12:45 a.m. and the place closed at 1 a.m. Between 12:30 and 1 a.m., George Schuh, who was killed a very short time after he entered the bar, came into the place and went into the back room looking for a couple of friends. There were six or eight soldiers in the back room who had been there for some time drinking beer. Some of them had tried to date the waitress, Ellen Rink, and had "made passes" at her. She complained about the soldiers' conduct in that respect and stated that she did not want to serve them any more beer; the last round of drinks was, therefore, taken to the soldiers by the bartender, Jones. The soldiers were laughing and drinking.

The appellant, Seabourn, who had been sitting at the bar since some time after 10 o'clock, went into the back room a few minutes before 1 o'clock and told the soldiers that it was about time to close and time for them to leave. According to appellant, one little fellow got up and took his glass of beer back to a booth in the rear of the room, and Schuh placed his hand on Seabourn's shoulder and told him that they would leave in a few minutes. Seabourn testified that he went back to the bar and got his .38 revolver that he kept in a drawer and went again to the back room for the purpose of getting the soldiers to leave, carrying the pistol as a bluff, thinking that the sight of the weapon would hurry the soldiers along.

The soldiers did leave and Seabourn claims that he followed them out to near the front of the building; that after all the soldiers were out except Schuh, and per-

haps one other, Schuh turned around and Seabourn claims that he struck Schuh with the .38 pistol thinking that Schuh was about to attack him, and that the gun went off accidentally.

But Ellen Rink, the waitress, testified that it was when the soldiers were actually leaving, and were in the front room on the way out the door that Seabourn got the pistol and followed them. In any event, Schuh was shot in the back of the head, and appellant was unable to explain to the satisfaction of the jury just how he could have been shot in that manner if he was facing appellant.

Appellant's version of the killing is not corroborated by the circumstances. In the first place, he claims that at the time he struck Schuh with the revolver it was in a holster. The holster—one with a closed end—was found on a table in the bar, and there was no bullet hole in it. After the shooting there remained in the barroom one soldier, a Sgt. Redmond; the bartender, Jack Jones; the waitress, Ellen Rink; and appellant, with the body of Schuh, who apparently was killed instantly.

A few minutes after the shooting, appellant's wife arrived and she, appellant, and Redmond took Schuh to the hospital in appellant's car. While at the hospital, appellant called the bartender, Jack Jones, and told him to get rid of the .38 pistol; that he had hidden it behind the speaker. However, Jones found the pistol on the floor where it must have fallen from behind the speaker. He and the waitress, Ellen Rink, put the pistol in Ellen's purse, where it was found by officers the next day.

Appellant is married, but he had been dating the waitress, Ellen Rink. He had been drinking over a period of several hours, and although he contends that he consumed only a few beers, he could have been angry with the soldiers for having tried to date Ellen and having made passes at her. The soldiers had done or said nothing that justified appellant in getting his pistol and following them to the door. They were his customers, laughing and having a good time and drinking what he had to sell. If they sought to date the waitress it was

nothing more than the natural result of having imbibed of appellant's stock in trade. Moreover, since appellant is a married man, the soldiers were probably at greater liberty to date Ellen than was appellant.

There is not a scintilla of evidence that would lead any reasonable person to believe that Schuh was about to make an attack on appellant. But appellant did make a murderous attack on Schuh with a deadly weapon, if only used as a club. Ark. Stats. 41-2202 provides: "The manner of the killing is not material, further than it may show the disposition of mind, or of the intent with which the act was committed". 41-2204 provides: "Malice shall be implied when no considerable provocation appears or when all the circumstances of the killing manifest an abandoned and wicked disposition".

Ark. Stats. 41-2246 provides: "The killing being proved, the burden of proving circumstances of mitigation, that justify or excuse the homicide, shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest, that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide."

No witness testified that he actually saw the shooting; the defendant is the only person who knows how it occurred, and the jury did not believe his unreasonable version of it. It was proved beyond any doubt that appellant killed the deceased with a deadly weapon by shooting him in the back of the head.

In *Higdon* v. *State*, 213 Ark. 881, 213 S. W. 2d 621, the Court quoted from *Townsend* v. *State*, 174 Ark. 1180, 298 S. W. ? as follows: "The law implies malice where there is a killing with a deadly weapon and no circumstances of mitigation, justification, or excuse appear at the time of the killing. Inasmuch as no one can look into the mind of another, much latitude is allowed in the introduction of testimony on the question of motive, and the only way to decide upon the mental condition of the accused at the time of the killing is to judge it from the attendant circumstances."

The intent to kill is not necessary to constitute murder in the second degree. *Wooten* v. *State,* 220 Ark. 750, 149 S. W. 2d 964.

Appellant objected to the failure of the Court to instruct the jury that the intent to kill was a necessary element of voluntary manslaughter. We fail to see how this could have been prejudicial to the appellant since he was convicted to second degree murder, but be that as it may, the intent to kill is not a necessary element in the crime of voluntary manslaughter. *Robertson* v. *State,* 212 Ark. 301, 206 S. W. 2d 748.

Appellant complains of the Court refusing to give a requested instruction telling the jury that in the event they found the defendant guilty of homicide and had a reasonable doubt as to the degree, they should give him the benefit of the doubt and find him guilty of the lower degree. The Court, on its own motion, gave a complete instruction fully and correctly explaining this point to the jury.

Finding no error, the judgment is affirmed.