Dorsey McRae WHITE *v.* STATE of Arkansas

CR 88-134                    765 S.W.2d 949

Supreme Court of Arkansas
Opinion delivered March 6, 1989

*Baxter, Eisele, Duncan & Jensen,* by: *Ray Baxter* and *Karen Wallace Duncan,* for appellant.

*Steve Clark,* Att'y Gen., by: *Jeannette Denhammcclendon,* Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Dorsey McRae White, a 68 year old widower and cattleman, was convicted of six counts of possession of marijuana with intent to deliver and one count of criminal use of an illegal weapon, a sawed-off shotgun. Finding no error, we affirm the convictions.

The most important question we consider is whether the appellant was entrapped into committing the drug offenses. The Hempstead County sheriff's office approached Vercina Lindsey, a black female, to cooperate in making a drug buy from Dorsey White. At the time, Ms. Lindsey had charges pending against her involving stolen credit cards and, according to her, she and the appellant had an ongoing sexual relationship. She agreed to cooperate with the sheriff's office. Thedford White, a black Texarkana police officer, was recruited to serve as an undercover officer and to pose as a friend of Ms. Lindsey.

Officer White made five separate purchases of marijuana from the appellant over a six week period. The first sale took place on October 2 and involved about 1.5 ounces of marijuana for $200.00; the second sale occurred on October 14 and involved 6.2 ounces for $425.00; the third sale on October 22, 7.7 ounces for $550.00; the fourth sale on November 3, 6.9 ounces for $550.00; and the final sale on November 12, 1.75 pounds for $1,900.00.

The appellant told the jury that Vercina said her "friend" (Officer White) was a preacher who needed marijuana for medicinal purposes but could not be seen buying it. He testified that when Officer White first came to his home to ask for marijuana, he told him, "that if he was in that shape, he was a preacher . . . I would try to help him."

Officer White's and Ms. Lindsey's testimony was different.

Ms. Lindsey said she merely told the appellant she had a friend who wanted some "dope." She also testified that the appellant had given her marijuana for her own use. She said, "he would take some out of [a bag] and put it in a paper towel. I asked him why don't you give me a little more, and he said *no, it's for somebody else.*" (Italics supplied.) She also said that after Officer White made the first buy, the appellant called her and asked, "does your buddy need any more smoke, because I will get him some more."

Officer White testified he never told the appellant he was a preacher or why he wanted the drugs, and he never heard Ms. Lindsey offer any explanation to the appellant. When he told the appellant he wanted marijuana, the appellant told him he could supply him with whatever he needed.

In addition, another officer testified that the appellant's statement given after his arrest contained no explanation for the drug sales.

■ Was the appellant entrapped? The trial judge refused to rule as a matter of law that the appellant was entrapped. He gave the issue to the jury for a decision and he was right. Ark. Code Ann. § 5-2-209(b) (1987) defines entrapment as follows:

> Entrapment occurs when a law enforcement officer or any person acting in cooperation with him induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

■ While we primarily focus on the conduct of the officers, the defendant's conduct should not be disregarded. In *Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978), we said the following:

> [A] defendant's conduct and predisposition, both prior to and concurrent with, the transactions forming the basis of the charges are still material and relevant, on the question [of] whether the government agents only afforded the opportunity to commit the offenses with which he is charged.

■■ Entrapment does not occur when government agents

merely afford the opportunity to do that which a person already has a predisposition to do. *See Jackson* v. *State*, 12 Ark. App. 378, 677 S.W.2d 866 (1984). Entrapment as a matter of law is established only if there is no factual issue to be decided. Ordinarily, it is a question of fact. *Walls* v. *State*, 280 Ark. 291, 658 S.W.2d 362 (1983).

■ The appellant had the burden of proving he was entrapped. He had to convince the jury that he was telling the truth and that Vercina and Officer White were not. He was the only one to testify that he was persuaded by the "sick preacher" story. Officer White and Vercina Lindsey said no such story was told to the appellant. The jury chose to believe Officer White and Vercina Lindsey.

The argument that the interracial relationship between the appellant and Ms. Lindsey had a bearing on the jury's verdict ignores the state's evidence. The appellant made five separate sales to Officer White involving about three pounds of marijuana over a six week period. Undoubtedly, the jury was convinced that the appellant was not a naive cattleman but was a dealer in drugs who deserved serious punishment.

The appellant also complains about his conviction for possession of 1/7th of an ounce of marijuana with the intent to deliver. He argues the small amount is not enough to prove it was intended for a sale, citing Ark. Code Ann. § 5-64-401(d) (1987), which states that at least an ounce must be possessed to create a presumption of intent to deliver. Furthermore, he claims that if it had been intended for sale, he would have included it in the last sale to Officer White.

■ The jury could consider the fact that the appellant had sold drugs in deciding he also intended to sell the small amount. That fact combined with the appellant's testimony that the marijuana was not for his own use, and the testimony of officers that such quantities were sometimes sold in a form known as "dime bags," supports the jury's determination the marijuana was intended for sale.

■ Two arguments made by the appellant will not be considered because they were not preserved for appeal. The appellant claims repeated inflammatory remarks by witnesses

and by the prosecuting attorney denied him a fair trial. Not one objection was made to the remarks about which the appellant complains. We will not consider an argument on appeal unless it is made below. See *Hughes* v. *State*, 295 Ark. 121, 746 S.W.2d 557 (1988); Ark. Code Ann. § 16-91-113(b)(3) (1987). Appellate counsel, who did not defend Dorsey White at trial, makes a passionate argument about the conduct of the prosecuting attorney, but we are not convinced that any one statement or the cumulative statements were so flagrantly prejudicial that the trial court should have intervened. See *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

The same is true regarding the argument that the search warrant was defective. The search of the appellant's home resulted in the seizure of the 1/7th ounce of marijuana and the sawed-off shotgun. None of the arguments made on appeal were made to the trial court so we will not consider them.

█ Though the shotgun was not listed on the warrant, the trial judge ruled its seizure was proper, and we agree. The weapon is prohibited by law. Ark. Code Ann. § 5-73-104(a) (1987). The officer testified that discovery of the shotgun was inadvertent. An officer, who, in the course of otherwise lawful activity, observes the nature and location of things which he reasonably believes to be subject to seizure, may seize such things. A.R.Cr.P. Rule 14.4; *see also Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160, *cert. denied*, ___ U.S. ___, 108 S.Ct. 101 (1987).

Essentially, the appellant lost his case to the jury. We find no properly preserved error that would warrant reversal.

Affirmed.

HOLT, C.J., and PURTLE and NEWBERN, JJ., dissent.

JACK HOLT, JR., Chief Justice, dissenting. I do not agree with Justice Purtle that the appellant, Dorsey McRae White, was "entrapped" by law enforcement officials to commit six offenses relating to the sale of marijuana. The defendant was in the drug business and got caught. I do join him, however, in finding that the record is saturated with prejudicial remarks by the prosecutor which were not related to matters of evidence, but were injected into the trial for the obvious purpose of creating prejudice in the minds of the jury. In addition, I feel there is insufficient evidence

to convict the defendant on the charge of possession with intent to deliver one-seventh ounce of marijuana since the record is devoid of any proof of intent to deliver.

As noted by Justice Purtle, the conduct of the prosecutor was sufficient to deny the appellant a fair trial. However, I limit my concern to the impact of the prosecutor's prejudicial remarks to the jury in regard to sentencing of the defendant.

Under our criminal justice system, we call upon the jury to make findings of guilt and to assess punishment in the same proceeding, Ark. Code Ann. § 5-4-103 (1987), unless there is an exception which calls for bifurcation. *See e.g.,* Ark. Code Ann. § 5-4-602 (1987) (dealing with capital felony murder cases). In evaluating the remarks made by the prosecutor during the course of the trial, we should view his comments in light of what effect, if any, they may have had upon the jury's finding of guilt or innocence and also, what effect, if any, *they may have had upon the assessment of punishment.*

Since the evidence is overwhelming as to the appellant's overall guilt, except for the sale of one-seventh ounce of marijuana, the comments of the prosecutor, set out in detail in Justice Purtle's dissent, though prejudicial, should not require us to reverse and remand this case for retrial. However, when I see that the jury assessed the maximum period of confinement on each count of possession of marijuana with intent to deliver, including the charge of possession of one-seventh of an ounce, it is obvious that the remarks of the prosecutor had a telling effect on the jury in assessing punishment.

Although the trial court mitigated the sentences in part by ordering that three of the ten year sentences run concurrently with the other three, I do not feel its actions were sufficient under the circumstances. For this reason, I would order each sentence reduced to the minimum authorized by law. *See Dandridge* v. *State,* 292 Ark. 40, 727 S.W.2d 851 (1987). Cases of prosecutorial abuse should not go untreated.

NEWBERN, J., joins this dissent.

JOHN I. PURTLE, Justice, dissenting. I could not sleep tonight if I failed to dissent in this case.

Dorsey White is a 69 year old resident of Hempstead County; he has lived there since he was a teenager. He never had a criminal record until he was charged in this affair. Dorsey White is now serving what at his age could amount to a life sentence. It is my belief that these charges resulted from entrapment by the sheriff.

The appellant was sentenced to ten years each on six counts of sale or possession of marijuana with intent to sell. He was also sentenced to six years imprisonment for the offense of criminal use of prohibited weapons. Finally, he was fined $70,000. The weapons were handguns taken from his home in a search during the marijuana investigation. There was no evidence that he had ever intended to use the weapons for any illegal purpose. Indeed, the one gun which seemed to be illegal was a family heirloom.

Before getting into the question of entrapment, I wish to discuss certain prejudicial remarks made by the prosecutor. I believe they warrant a reversal of this case or at least a reduction to the minimum length of sentence required. The prosecutor's misconduct commenced with the opening statement when he said:

> The defendant is a well known man of mature years. He had lived in Hempstead County for a long time. He has never been convicted of a crime before. Certainly, not a serious crime, and I hope this isn't a problem.

There was no evidence that the appellant had been convicted of any crime, serious or otherwise. The prosecutor continued with the statement:

> The defendant is white. The confidential informer is black. The drug problem doesn't know those colors. I don't think it will be a problem with you all. We talked about Ms. Lindsey, and I am sorry we had to use a criminal to get another criminal, but it takes a thief to make a thief sometimes. And that is better than letting it go.

Such remarks were not based on anything the prosecutor intended to prove but rather were made solely for the purpose of prejudicing the minds of the jury. There was no reason to emphasize that the informant was a young black woman and the accused was an older white man.

The remarks made here, and throughout the trial, were sufficient to deny the appellant a fair trial. In *King v. State*, 9 Ark. App. 295, 658 S.W.2d 434 (1983), the Court of Appeals reversed a case because the officer testified: "I was very well aware that he is a known narcotics dealer." The Court of Appeals was simply following precedent set by this court in *Dean v. State*, 272 Ark. 448, 615 S.W.2d 354 (1981); and *Sharron v. State*, 262 Ark. 320, 556 S.W.2d 438 (1977). We have on many occasions held that when prejudicial and inflammatory remarks of a state's witness or the prosecutor rise to the level of prejudice, an admonition to the jury to disregard the remarks will not suffice, and a new trial must be granted or the sentence reduced. *Dandridge v. State*, 292 Ark. 40, 727 S.W.2d 851 (1987); and *Meadows v. State*, 291 Ark. 105, 722 S.W.2d 584 (1987).

Another one of the many instances during the trial, which in combination warrant a reversal or reduction, was when Thedford White, an "imported" officer from Texas, referred in the jury's presence to: "About three major drug dealers and Dorsey White was one of those." There was no evidence that Dorsey White was ever a major drug dealer. Indeed, according to the defendant's testimony, the only drugs he ever sold were to Thedford White pursuant to the misrepresentation that Officer White was a minister and in need of the marijuana for medicinal purposes.

Many questions asked by the prosecutor did not relate at all to the sale of marijuana. One question elicited the following testimony from the main witness: "Cause I had been fooling around with Dorsey . . . I had been going to bed with him. I could get anything I wanted. He would give me food to take home. Anything I wanted." Neither sex nor color were relevant to the question which was before this jury.

The prosecutor told the jury: "It is a sad, sad state of affairs when you masquerade marijuana sale in the guise of the good Samaritan, just trying to help the woman with her utility bills or food. That's sad. But it's sacrilege when you say you are doing it to help a preacher." There had been testimony by the accused that the undercover agent had represented himself, or at least had been represented by Ms. Lindsey, as a preacher who needed to buy the marijuana for a chest problem.

Concerning the weapon, the prosecutor said, "Well, he had

an illegal weapon for years. That weapon, if we believe him, is older than Ms. Lindsey is." The prosecutor described the .22 revolver, the 12-gauge shotgun, the 9 millimeter pistol, and the 12-gauge sawed-off shotgun. He then stated:

> When you deal with the kind of people a dope dealer deals with you have a lot of guns because you need more protection than the rest of us. The sawed-off shotgun, just like Tommy Pope told you, is just like something they see in the drug case a lot. You can handle it in short quarters and it spreads everywhere. That's why its illegal, because there is no legitimate purpose for it.

There was not one bit of evidence that the appellant had ever used any of the guns for anything but legal purposes. Some of them were heirlooms, others were no doubt for his own protection in his home.

> Most prejudicial of all was this statement:

> Men like Dorsey White in the past time sold men and women's bodies. In the present, they sell their minds and their emotional well-being. That's the kind of a man he is . . . That's the kind of thing we have got to stop.

The chief reason for reversing the appellant's conviction is that Dorsey White was, in my opinion, entrapped by the sheriff and his agents. It is necessary to examine some of the circumstances surrounding this case. It must be remembered that Vercina Lindsey is the principal actor here. She had been charged and convicted of a felony concerning credit cards and was charged and convicted a second time; prior to being sentenced, she inquired of the sheriff whether there was anything she could do to keep from going back down to the Department of Correction. The exact date of her second conviction is not known, but she stated:

> My last conviction was five or six months ago. I did not do any time for that because I made a deal to keep from going. I had a choice between serving my sentence, and I made a deal. I did that by helping the police with trying to bust the dope. I made that deal with Don Worthy. I told him that I could help him out with the dope dealers. He mentioned Dorsey White's name in that conversation. At first he

asked me if I could make a buy for him, and I told him I thought I could. The simple truth of the matter is that I never bought anything from Dorsey White before in my life. When Don Worthy requested that I see if I could make a buy from Dorsey White, I was not paid money to do it, I did it to save myself from going up. The result was that I did not spend any time for the charge that I was under. I did not get a probated sentence; it was throwed out. In order to fulfill my end of the bargain, I went in and talked to Dorsey and got a buy from him.

Ms. Lindsey was placed in contact with an undercover officer from Texas and together they approached the appellant. On the first trip the appellant did not sell any marijuana. Neither did he promise to get them some. His testimony was that Ms. Lindsey introduced Officer White as her boyfriend or "dude." The officer stated he was a minister and needed marijuana for a breathing problem. After several contacts, the appellant did produce a small amount of marijuana. These parties kept coming back and over a period of five weeks persuaded him to sell them five different amounts of marijuana. They tried to get him to sell five pounds at the last meeting, but he was able to come up with less than half that amount. On that same date, they searched his house and found a residue of marijuana which was measured at 1/7 of one ounce. For this marijuana he was found guilty of an additional count of possession with intent to sell and sentenced to another ten years and fined an additional $10,000.

The undercover officer testified that when he first met the appellant he was with Vercina Lindsey and that "[s]he told me that he was a major drug dealer." Vercina Lindsey's testimony was not at all in keeping with this version of events. Her testimony was a denial of Officer White's testimony and a statement that she had never known Dorsey White to sell marijuana. Apparently the state feels it can bootstrap this "set-up" deal into qualifying the appellant as a major drug dealer. There is no evidence that he had ever been a drug dealer before this time, and all of the evidence shows that these were the only drugs he ever sold. Therefore, it seems to me that such a statement was completely unjustified and that the officer, who had worked with Arkansas officers previously, should have known not to deliberately make such a prejudicial statement.

Ms. Lindsey further stated under oath that the appellant "had not in the past requested for me to find him buyers for marijuana. . . . I knew he would have marijuana if I needed it. It wasn't a lot, but he would have a little bit of it." Although some of her testimony was at the very least confusing, her bottom line was: "I never bought any marijuana from him. I do not know of him selling any prior to that time."

It is a little strange, but the sheriff could not remember anything about the set-up. I cannot find from the abstracted testimony where the sheriff made any denial of the statements by Vercina Lindsey that she agreed to "set-up" the appellant for these drug buys. He "wouldn't be surprised," the sheriff said, if the state police paid Ms. Lindsey something for what she did. He could only say that he didn't pay her anything at that time. The testimony of the informant was undisputed that she was working as an agent for the sheriff. Therefore, the sheriff is charged with knowledge of her statements that indicated she helped entrap the appellant. The reason the sheriff "went after" the appellant is not explained, but it is clear that the sheriff initiated the action. It is also clear that the appellant had never been known to sell marijuana before.

The appellant never denied that he procured the marijuana and delivered it to the police officers. However, he named the persons who supplied it to him and stated that he made no profit but simply charged the undercover agent the amount he had paid for it. On most of the occasions, the officers would either have to wait or come back while the appellant went to get the marijuana or arranged to have it delivered. The appellant was trying to help Vercina Lindsey and her "preacher friend." It was the appellant's duty to show entrapment, and I am persuaded that he did. See *Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978).

As for the one-seventh ounce which was seized at the time of the appellant's arrest, it was less than the "one ounce presumption" and this fact clearly supports the view that the substance was not held with the intent to deliver. Certainly there was not one grain of evidence to indicate that Dorsey White intended to sell that little scrap of marijuana. The presumption was ignored in this case.

It is interesting to note that there were no recorded conversa-

tions between the appellant and the purchasers of this marijuana. If the police possess modern equipment, they are capable of making a record of a controlled buy at any time. It seems to me that, when they are trying to obtain evidence about a 68 year old person who has never before been convicted of a crime, they should take some care to record at least some of the conversation.

An examination of the facts, as related by the officers and the appellant, clearly indicates to me that the appellant was tricked into these sales. Even if that were not so, he did not get a fair trial because of the prosecutor's and state's witnesses' snide remarks and innuendoes that this old man was sleeping with this young black woman.

This case is among the most unjust I have reviewed during my entire tenure on this court. I believe the decision is wrong. Either the case should be reversed and dismissed because of the entrapment, or the penalty should be reduced to the minimum.